**Michael D. FOX, Plaintiff-Appellant,**

v.

**TAYLOR DIVING & SALVAGE COMPANY, et al., Defendants-Appellees.**

No. 81–3311
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1983.

Louis R. Koerner, Jr., New Orleans, La., for plaintiff-appellant.

W.K. Christovich, New Orleans, La., for defendants-appellees.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Michael Fox appeals an adverse judgment on his Jones Act, 46 U.S.C. § 688, and related claims resulting from a physical injury incurred while working on a submarine pipe alignment rig (SPAR). He challenges, *inter alia,* the holding as a matter of law that he was not a seaman for the purposes of the Jones Act. We affirm the district court.

## I. BACKGROUND

Michael Fox worked for Taylor Diving & Salvage Company as a Shop Job Coordinator in Rotterdam, The Netherlands. Fox had an office onshore at the Taylor facility on the St. Jobshaven pier in Rotterdam and lived onshore. Fox supervised a large crew and was responsible for coordinating maintenance and repairs of Taylor equipment. The equipment included several barges known as BARs, special underwater pipeline repair devices known as SPARs (submarine pipe alignment rig), and other tools and equipment. The facility was used to fulfill a contract between Taylor and Brown & Root, Inc., which was itself under contract to Occidental Petroleum to repair Occidental's underwater pipeline in the North Sea.

In April, 1978, Taylor was preparing hyperbaric equipment for use in repairing the underwater pipeline. During the evening of April 24, Fox was testing the progress of repairs to SPAR-6. The SPAR is a non-navigable chamber used to create an airtight environment in which welding and other pipeline repairs can be performed. SPAR-6 was being repaired and was still in dry dock when Fox decided to board it for testing and inspection. He positioned himself inside the habitat section of the SPAR, which was stopped five feet above the ground at the time. While inside the habitat, Fox attempted to adjust the hydraulic valves and the flow controls on the door clamps. The controls are designed, however, to be used from the outside of the habitat only. To reach the controls from the inside, Fox had to stick his arm through the clamps at the end of the device. During this maneuver, the hydraulically-operated hinged door swung up and struck Fox' right arm, resulting in severe injury and eventual loss of the arm. After the injury, Fox lost his job with Taylor Drilling.

Fox later filed suit in U.S. District Court for the Eastern District of Louisiana with claims under the Jones Act, 46 U.S.C. § 688, and related grounds, against his employer, Taylor Diving & Salvage Co., as well as against Brown & Root, Occidental, and other tangential parties. Fox received a jury trial.

Early in the trial, Fox presented factual testimony pertaining to lost earnings and other economic damages. One particular expert, a consulting economist, gave testimony on lost wages, relying in part upon the statements of Fox's attorney to the effect that Fox had been promoted before the accident from a seaman's job to a middle management position. The testimony contained the explicit presumption that Fox was not a Jones Act seaman at the time of his accident. Neither party objected to the expert's testimony. Immediately thereafter, Fox took the stand in his own behalf. His testimony indicated a belief that he was a Jones Act seaman at the time of his injury. Fox's attorney encouraged this claim to Jones Act status.

As soon as it became clear that Fox's attorney was going to elicit from Fox a theory of Jones Act status exactly contrary to that which the last witness was given, the judge called a recess to meet with counsel in chambers. The plaintiff accompanied his attorney into chambers for this conference. In chambers, the judge held an evidentiary hearing on the propriety of the testimony regarding Jones Act status. During this hearing, Fox had an opportunity to discuss the nature of the proof regarding Jones Act status and the reasoning behind Fox's failure to question the assumptions of the expert witness.

After this hearing, the judge returned to the courtroom and ruled as a matter of law that Fox was not a Jones Act seaman at the time of the accident. The judge then allowed Fox to continue presenting his case,

but only under the limitation that no further claim to Jones Act status be made. The remaining claims, under theories of negligence, products liability, the Longshoremen and Harbor Workers' Compensation Act (LHWCA), and other theories were presented to the jury. The jury found against Fox on all counts.

Fox now brings an appeal, pursuant to 28 U.S.C. § 1291. The appeal alleges numerous errors in the district court, most of which relate to the judge's ruling from the bench that Fox was not a Jones Act seaman at the time of the accident. We have examined each of his claims and, finding them unpersuasive, affirm the judgment of the district court.

## II. FOX'S STATUS UNDER THE JONES ACT

The main claim in this appeal is that the district court erred as a matter of substantive admiralty law in ruling, during the early stages of trial, that Fox was not a seaman for purposes of the Jones Act. We find no theory to support a claim that Fox was a Jones Act seaman at the time of his accident, and therefore find no error in the district court's ruling, under the special standard of review given Jones Act claims under *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc).[1]

### A. Fox's position was not a seaman's job.

■ The test in the Fifth Circuit for seaman status under the Jones Act was first established in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959). The basic provisions are that the injured worker must have been (1) assigned permanently to a vessel or fleet of vessels, or performing substantial work thereon, and (2) performing work that resulted in a contribution toward the accomplishment of the vessel's mission.[2]

■ Setting aside temporarily the question of whether Fox was connected with a vessel at all, we must still find that Fox was not a Jones Act seaman at the time of his accident. Fox fails to meet that part of the first requirement which demands being assigned permanently to the SPARs and BARs. *Robison, supra.* Fox's job did deal with vessels in the Rotterdam harbor, but when the rigs left the harbor, Fox neither

---

1. The *Boeing* case is often cited in this Court for the proposition that directed verdicts and judgments notwithstanding the verdict should be granted when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." 411 F.2d at 374. However, *Boeing* established not one but two standards of review. The above standard applies to federal actions generally; the other standard is to be applied in Jones Act and FELA actions. Under the Jones Act-FELA standard defined in *Boeing,* directed verdicts and judgments notwithstanding the verdict are to be granted only when there is no scintilla of evidence to support a verdict for the nonmoving party. This standard is designed to lessen the burden placed upon plaintiffs pursuing these particular federal statutory claims. *Id.* at 372–73. We take painstaking care to point out the two differing standards set forth in *Boeing,* and underscore our use of the Jones Act-FELA standard rather than the general standard in *Boeing.* Use of the "scintilla" standard for Jones Act and FELA cases is settled precedent in this Circuit, *e.g. Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir.1980), even if not universally popular, *see Landry v. Two R. Drill-*

*ing Co.,* 511 F.2d 138, 143 (5th Cir.1975) (Gee, J., dissenting).

2. In *Robison,* this Court held that there is an evidentiary basis for a Jones Act case to go to the jury when the following conditions are met:

(1) If there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movements or during anchorage for its future trips.

*Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959).

In *Braniff v. Jackson Ave.-Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), this Court extended the requirement of permanent assignment to a vessel to include a fleet of vessels. *See Abshire v. Seacoast Products, Inc.,* 668 F.2d 832 (5th Cir.1982).

left with those vessels nor waited for their return. Instead, Fox was free to supervise work on whatever other assignments his employer might have had for him. Fox's contention of permanent assignment to a fleet, if accepted, would extend Jones Act coverage to every employee of a maritime company, right down to the harbor workers and even the reservations clerks for a vacation cruise line. Such an interpretation is unreasonable.

■ Alternatively, Fox argues that he met the second portion of the first requirement by performing a substantial part of his work on a fleet of vessels. His deposition testimony indicates that he spent approximately 35% of his time on vessels in dry dock or on vessel-related equipment. Yet even the majority of this work was performed on structures that were not Jones Act vessels at the time of his work. Fox's principal task was onshore supervisory work of maintenance employees. We do not suggest that supervisory personnel are never covered by the Jones Act, *see Lindgren v. United States,* 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930) (ships officers covered), but his contact was brief and sporadic. Fox was working as a troubleshooter for other harbor workers. Brief, sporadic contacts with vessels are not enough; some "degree of frequency and regularity of performance" must be shown. *Keener v. Transworld Drilling Co.,* 468 F.2d 729, 732 (5th Cir.1972). We conclude Fox fails to meet the first of the two requirements for a Jones Act seaman.

We find that he fails to meet the second requirement as well. We find Fox's work at the time of the accident not substantially related to the tasks traditionally performed by blue water seamen. Mechanics, like welders and boilermakers, do not perform the regular ocean-related work or even the support tasks of blue water seamen. The deceased employee in *Thibodeaux v. J. Ray McDermott & Co.,* 276 F.2d 42 (5th Cir.1960) was a welder who spent four days loading cargo aboard a flat-deck unmanned barge, the McDermott Tidelands No. 5. Of a claim to Jones Act status, we stated:

Here the decedent fails on many scores. He was a regular shore worker. He lived, ate and slept at home. He was not attached or assigned to any particular vessel either as a member of the crew or otherwise. His customary duties were in welding and cutting on vessels under construction, conversion or outfitting. His relation to the barge McDermott No. 5 was purely transitory—both in point of work to be done and the time of its duration. He was to weld to enable proper securing of cargo for the intended ocean voyage. None of the workers engaged in loading and securing the cargo either were to, or could, make the voyage on this unmanned barge.

\*     \*     \*     \*     \*     \*

Clearly what the decedent was doing and had been doing for four days did not make him then a seaman. And these vague dreamy possibilities about what he might be, or do, in the future lacked sufficient legal buoyancy to float a seaman's status.

*Id.* at 46–47. Thus Fox fails to meet either of the two requirements to establish Jones Act status.

**B. Fox's injury was not on a vessel.**

A final negation of Fox's Jones Act claims, however, is grounded in the understanding that his work, whatever its nature, was not performed on a vessel as that term is used in a Jones Act context.

■ Fox proffers two theories to consider his work as being "on a vessel" to justify coverage under the Jones Act. Neither is persuasive. The first is that the SPAR itself on which he was injured is a vessel. For authority, he cites *Hicks v. Ocean Drilling and Exploration Co.,* 512 F.2d 817 (5th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976). In *Hicks,* we held that a submersible oil storage facility, used in offshore drilling, was a Jones Act vessel. We stated then, as we reiterate now, that "unconventional craft" such as submersible drilling barges and floating dredges can fall under Jones Act coverage. 512 F.2d at 824. Yet

such a vessel must be "designed for navigation and commerce." *Id.* At the very least, such a vessel must be in use for navigation or direct commerce at the time of the accident. The SPAR fits neither category. It has no steering devices and cannot be navigated; it must be towed to the proper location before lowering itself to the pipeline. And, unlike an oil storage facility, it is not used in direct commerce. Rather, its sole purpose is to repair the pipeline that *is* used in commerce. Its function is that of a tool, not of a vessel. *See Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337 (5th Cir. 1982) (helicopter designed for marine landings and used primarily to transport offshore workers is not a Jones Act vessel).

■ Fox's other theory of Jones Act coverage is that the SPARs, together with the barges and other ships, constituted a single fleet of vessels to which Fox was permanently attached. Yet, having held that the SPAR is not a vessel, it cannot be an integral member of a fleet. Fox had no substantial contact with the genuine vessels of the fleet; his contact was limited to repairing the SPARs and other appurtenances to the vessels.

Even if the SPAR were part of the fleet, Fox's claim would fail upon the realization that Fox stayed behind when the fleet left on its missions. This case is unlike *Braniff v. Jackson Ave.-Gretna Ferry, Inc., supra* note 2, where the plaintiff worked on one of the New Orleans ferry boats continuously although not on a single vessel permanently. Fox did not have a full time association with a fleet of vessels. His recovery as a shore-based worker cannot be had under the Jones Act.

We find, in sum, that the district court properly interpreted Jones Act precedent in denying Fox seaman status.

## III. PROCEDURAL PROPRIETY OF JUDGE'S RULING

### A. Generally

■ Fox next challenges the procedural propriety of the district court's preemptory ruling against his Jones Act claims. We begin by acknowledging that, under normal circumstances, status as a Jones Act seaman is primarily a question of fact that deserves a determination by the finder of fact. Yet this rule is not inviolable. In *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980), this Court upheld a summary judgment of a Jones Act claim. Although Longmire was injured on a tender which could be a Jones Act vessel, we found that Longmire's principal job assignment was as a floorhand on a fixed drilling platform which was not a Jones Act vessel as a matter of law. We found no error in the district court's summary judgment against his Jones Act claims. *Id.* at 1346, citing *Keener v. Transworld Drilling Co.,* 468 F.2d 729, 732 (5th Cir.1972). *See also Beard v. Shell Oil Co.,* 606 F.2d 515, 517 (5th Cir. 1979) ("A court, trial or appellate, may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that an injured person is a seaman and member of a crew under the Jones Act.")

Even if the issue of Jones Act status can be decided on a summary disposition, Fox contends, the district court committed a procedural error in making its ruling in this case. We have already indicated our approval of the substantive ruling that the Jones Act does not apply to Fox's claim. Yet, we also must examine the procedures that might have colored Fox's case. We have examined the record carefully, and conclude that the actions of the district court were proper. We therefore undertake this review only to provide an additional ground for supporting the ruling on Jones Act status.

### B. Adopted testimony can serve as an adverse admission.

One basis for the ruling of Jones Act inapplicability was the testimony of Fox's expert witness, a consulting economist called upon to give an expert opinion on the amount of lost wages and other economic loss. The expert testified at a very early stage in the plaintiff's case. Attorneys for the defense raised no objection to the wit-

ness being called at that stage of the trial. The failure of defense counsel to object, which the judge admitted later during a chambers conference was surprising to him, developed into a valuable strategic ploy, because the expert based his testimony regarding lost wages upon the assumption that Fox was not a Jones Act seaman. Furthermore, he based this assumption on information and conclusions he claimed to have received from his client, Fox's attorney.[3]

There are circumstances where the testimony of an expert witness can serve as an adverse admission against the presenting party. Such circumstances must be narrowly construed, since a party cannot be expected to know every detail of a witness' testimony, and a jury must have the right to reject even uncontroverted testimony, when other evidence presented makes a convincing case for another viewpoint. *See* Weinstein's Evidence § 801(d)(2) at 151–66. McCormick believes the determination "ought to depend upon whether the particular circumstances warrant the conclusion that adoption in fact occurred, and not upon the discredited notion that a party vouches for his own witness." *McCormick on Evidence* § 269, at 650 (2d ed. 1972). This opinion is underscored by the purpose of the Federal Rules of Evidence "that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102. Our inquiry therefore turns on whether the facts of the case before us support a finding of an adverse admission.

**C. Expert's in-court statements bind Fox.**

■ In this case, we find that the totality of the circumstances surrounding the expert's testimony at trial is sufficient to preclude Fox from presenting a theory of recovery resting on the Jones Act.

First, the economist's assumptions that Fox was an onshore supervisory employee were a central and explicit theme of his detailed testimony. The expert stated several times that his calculations required the supposition that Fox was an onshore management worker. In fact, the expert's previous, pretrial calculations, which would have allowed Fox a mere fraction of the expert's "amended" recovery figure, did not depend on this explicit adoption of non-Jones Act status. Those initial calculations were refigured at the express wish of Fox and his attorney, who pressed the fact that Fox was promoted to "onshore" work.

When this information was elicited at trial, Fox's attorney made no attempt to question the witness concerning these assumptions, despite the damaging effect a holding of non-Jones Act coverage might have made on the overall case. The attorney's in-court actions, notably this silent adoption of the non-Jones Act theory, helped to bind him from claiming later in his case that the Jones Act should, indeed, apply.

3. In the midst of the expert's testimony, the trial judge dismissed the jury and questioned the witness as to the source of his understanding that Fox was not a Jones Act seaman when he was injured. As the court asked the witness about the nature of the discussions between the witness and the plaintiff's attorney, the following dialogue took place out of the presence of the jury:

THE COURT:
What did he tell you his earlier work was?
THE WITNESS:
Basically offshore construction.      .
THE COURT:
And how did he tell you it differed from present employment?                     .
THE WITNESS:
I think mainly in terms of the supervisory capacity.
THE COURT:

Alright. And you had also testified earlier that he told you that supervisory jobs was not offshore?
THE WITNESS:
That's correct.
THE COURT:
Where did he tell you it was?
THE WITNESS:
Onshore.
THE COURT:
Shore-based?
THE WITNESS:
Shore-based, at least.
THE COURT:
All right. Or on shore. All right ... when did Mr. K. communicate that to you?
THE WITNESS:
Oh, that was a couple of months ago.
THE COURT:
All right. Thank you.

Fox argues against such an estoppel by pointing out that he tried to make a showing that Fox was, indeed, a Jones Act seaman by putting Fox himself on the stand right after the expert's testimony. If the jury were to be confused by a conflict between Fox's testimony and the expert's earlier statements, he argues, that confusion should properly have been cleared up through a jury instruction to limit or ignore the earlier testimony of the expert, not to close the door to any possibility of Jones Act coverage. This argument is not persuasive. The potential of jury prejudice resulting from the expert's testimony was high. The effect of the witness testifying at such an early stage in trial would likely create a very strong impression to the jury, one that a limiting instruction would not necessarily remedy. And the silent assent of Fox and his attorney to a theory of non-Jones Act coverage propounded by Fox's own witness, with its possibility of a high award, is necessarily at odds with a theory of Jones Act coverage and a lower determination of lost wages. Fox's attorney seemingly was trying to explore both theories. Having early lost on one, he then wanted to eradicate the destructive inferences and rely upon the most favorable theory in hindsight. Especially in light of the high jury prejudice behind the expert's statements and Fox's silent acquiescence to the testimony of his own witness, a witness who based his testimony on the information that Fox's lawyer himself had provided, it worked no unfairness to Fox to issue a summary ruling on his Jones Act status.

D. Attorney's pre-trial statements support ruling.

■ It is unclear from the record whether the district court was influenced only by the attorney's in-court solicitation of a non-Jones Act theory, or perhaps also by the substance of the attorney's pre-trial statements to the expert that the expert recounted during his testimony. The latter would present two additional points to examine. The first is whether the confidential communications between the attorney and the expert witness were covered by a work product immunity. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings,* 601 F.2d 162 (5th Cir.1979). But such a claim, if ever available, was extinguished when the attorney himself requested the witness to disclose the information and made no objection when it was offered. A claim of work product immunity is lost when the attorney discloses the information to the court voluntarily. *See Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 616 (S.D.N.Y.1977).

■ Similarly, there might have been concern as to the hearsay nature of these attorney-expert communications. An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed.R.Evid. 703, but not as general proof of the truth of the underlying matter, Fed.R.Evid. 802. But an objection of hearsay is also waived if no timely objection is made. The fact that Fox's attorney solicited the expert testimony without a contemporaneous objection precludes an objection on appeal as to the district court's possible reliance on the substance of the testimony. Whether the district court was relying on the in-court behavior or the pre-trial communications of Fox's attorney, we find no error.

■ The remaining point to examine is the procedural propriety of the judge's in-chambers hearing during which he made his determinations. We find no impropriety. In reaching this conclusion, we begin by recognizing that a district court judge has both discretion and responsibility to aid in narrowing the issues to be presented at trial. Fed.R.Civ.P. 16. A groundless contention, one in which both the facts and the law are to the contrary, need not be heard in the district court. In this case, the facts were abundantly clear that Fox was an onshore management worker at the shipyards. The expert testimony relied upon this status. Fox's adoption of the testimony sealed the book of judgment on this issue.

The trial judge properly recessed the court when this question arose and held an in-chambers conference to evaluate the evidence regarding Jones Act status. Fox's attorney was unable to make a showing that he could present any credible evidence to support a Jones Act claim. The trial judge, therefore, was not obliged to allow Fox to continue with a Jones Act theory, and indeed made such a ruling on his return to the bench. We find no impropriety in his actions. To promote the "[c]onservation of precious court and judge time", *United States v. Kolesar,* 313 F.2d 835, 840 (5th Cir.1963), summary disposition of unsupportable claims is within the broad discretion of the trial judge, even if those same claims survived the scrutiny of a pre-trial order. *Bettes v. Stonewall Insurance Co.,* 480 F.2d 92 (5th Cir.1973); *Sherman v. United States,* 462 F.2d 577, 579 (5th Cir. 1972).

We find that the procedural methodology in excluding the Jones Act causes of action was proper under the circumstances of this case, and we uphold the ruling of the district court.

## IV.  ALTERNATE CAUSES OF ACTION

Fox next claims that the district court erred in denying his claim based on the unseaworthiness of the SPAR. The owner of a vessel owes a warranty of seaworthiness to longshoremen working on the vessel. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This basis for recovery was severely limited by the 1972 Amendments to the LHWCA. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 262–63, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979). Yet even if the right still exists for a limited class of *Sieracki* seamen, *see Aparicio v. Swan Lake,* 643 F.2d 1109, 1118 n. 17 (5th Cir.1981), it does not exist for Fox.

While Fox was not working on a vessel or fleet of vessels, a warranty of seaworthiness can also extend to an appurtenance to a vessel. *See Brown & Root, Inc. v. DeSautell,* 554 S.W.2d 764 (Tex.Civ. App.—Houston [1st Dist.] 1977, *writ ref'd*

*n.r.e.*). It is this seaworthiness claim that Fox asks this Court to consider.

We begin by recognizing that the SPAR is a piece of equipment that can be vital to the repair operations Taylor Diving was planning. It would be impossible to say, under such circumstances, that a SPAR could never be an appurtenance to a vessel. The barge that traveled with SPAR–6 could be considered a vessel. *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir.1977). We find, however, that the SPAR was not functioning as an appurtenance to a vessel. An appurtenance to a vessel must be in use in conjunction with the primary functioning of the vessel *at the time of the accident,* in order for a warranty of seaworthiness to attach to that object. At the time of Fox's injury, the SPAR was in dry dock for repairs and could not have been part of a vessel's operations, whether of the BAR 331 or any other. Our finding is in accord with *Miller v. A/B Svenska Amerika Linien,* 454 F.2d 1094 (3d Cir.1971), where a longshoreman slipped on a puddle from a leaky bucket. The bucket had been used on a deck to hold drinking water for longshoremen, but later was laid down at dockside, where the accident occurred. The court stated that although the bucket may have been an appurtenance while on the vessel, it lost this character once it was removed. We find similarly that a SPAR cannot be an appurtenance while in dry dock and non-operational. Therefore no warranty of seaworthiness could extend to cover Fox's cause of action.

## V.  OTHER POINTS OF APPEAL

Fox next challenges the treatment in the district court of the availability of alternative remedies under workers compensation. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. He refers to the mention of the words "workers' compensation" during the defendant's opening statements to the jury, and to his request in the district court for a jury instruction pointing out the inapplicability of workers' compensation to this litigation. Fox was unable to provide the

**1358**

district court with specific references in the record to any misleading statements made in the jury's presence, and the district court declined to give the jury such an instruction. We have reviewed the trial record carefully, and find no improper statements made in the presence of jury. We therefore find no grounds to question the district court's rulings on the request for jury instructions, and no reason to call for a new trial.

Fox raises a number of other issues on appeal. We have considered them carefully, examined the record for supportive evidence, and find them without weight. Some are desperate pleas frivolous in nature, like his request that we disqualify the district court judge based on the judge's $2. annual dues payment to a civic organization that on occasion had been assisted by counsel for both sides of this case. We find no justification to make a more complicated case out of a narrow, straightforward one. We affirm the decision of the district court.

AFFIRMED.