# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 8, 2010

No. 10-20389

Lyle W. Cayce
Clerk

ECUADORIAN PLAINTIFFS,

Plaintiff-Appellant

v.

CHEVRON CORPORATION,

Petitioner-Appellee

v.

3TM INTERNATIONAL, INC.; 3TM CONSULTING, L.L.C.,

Respondents-Appellees

Appeal from the United States District Court for the
Southern District of Texas (Houston Division)

Before GARZA and BENAVIDES, Circuit Judges, and CRONE[*], District Judge.
FORTUNATO P. BENAVIDES, Circuit Judge:

A group of Ecuadorian citizens (the "plaintiffs") who have sued Chevron Corporation in Ecuador appeal from the district court's order allowing Chevron to depose their consultant, 3TM. We affirm the district court's order directing 3TM to submit to a foundational deposition, subject to the limitation described

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

below.

I.

In 2003, the plaintiffs sued Chevron in Ecuador, seeking to hold Chevron liable as the successor to Texaco Petroleum Company.[1] The plaintiffs allege that Texaco polluted the Ecuadorian Amazon Rainforest over the course of several decades while engaging in oil extraction in the region. This appeal arises out of the plaintiffs' Ecuadorian lawsuit against Chevron. Specifically, it concerns Richard Stalin Cabrera Vega ("Cabrera"), an individual appointed by the Ecuadorian court to serve as a neutral expert in the Ecuadorian proceedings. The Ecuadorian court ordered Cabrera to draft a report describing the effect of Texaco's operations on Ecuador's environment, accompanied by "all the documents that serve as support or a source of information" for the report. The court also ordered that these supporting documents "be provided to the parties" upon the report's release. In 2008, Cabrera released a report recommending that Chevron be held liable for $27.3 billion in damages, but the Ecuadorian court has yet to render a judgment against Chevron.

Despite Cabrera's professed impartiality, Chevron claims that Cabrera actually worked closely with the plaintiffs to produce his report, much of which Chevron alleges was secretly ghostwritten by the plaintiffs' U.S. consultants. Consequently, Chevron has initiated a series of discovery proceedings in the United States under 28 U.S.C. § 1782(a), seeking evidence of collusion between Cabrera and the plaintiffs' U.S. consultants. Section 1782(a) allows district courts to order discovery in the United States for use in foreign proceedings in certain circumstances. *See, e.g.*, *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

---

[1] Chevron and Texaco merged in 2001. We note that the nature of the relationship between Chevron and the former Texaco appears to be disputed in the Ecuadorian proceedings.

No. 10-20389

In the proceedings below, Chevron filed a § 1782(a) application seeking discovery from 3TM, an environmental consultancy firm in Houston. The plaintiffs' consultant Stratus retained 3TM to assist the plaintiffs in mediation and settlement discussions with Chevron in 2007, and Chevron alleges that 3TM and Stratus produced a report that Cabrera integrated into his report, without disclosing his reliance on it. After the plaintiffs intervened to quash Chevron's subpoena of 3TM, the district court ordered 3TM to submit to limited discovery. The court concluded that discovery was appropriate based on the *Intel* factors that the Supreme Court has directed courts to consider in reviewing requests for discovery in aid of foreign proceedings. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The court also found that although some of the documents and information sought by Chevron could be protected under various privileges, this protection would have been waived by the provision of any documents to Cabrera. Initially, the district court ordered the plaintiffs to produce a list of documents "that were turned over, directly or indirectly, to Cabrera," but after the plaintiffs represented that they believed no documents were given to Cabrera, the court ordered 3TM to submit to a foundational deposition, limited to "whether 3TM collaborated with Cabrera" and "the extent to which 3TM recognizes its work in the Cabrera report." The plaintiffs then filed this appeal.

II.

We review de novo whether the statutory prerequisites for granting § 1782(a) relief are satisfied.[2] *See Republic of Kazakhstan v. Biedermann Int'l*,

---

[2] One of these statutory prerequisites is that evidence sought in a § 1782(a) application must be "for use" in a foreign proceeding. *Clerici*, 481 F.3d at 1332. On this appeal, the plaintiffs argue that Chevron is not requesting evidence "for use" in the Ecuadorian proceedings, as its ultimate goal is to undermine the Ecuadorian proceedings. However, as Chevron notes, the plaintiffs did not advance this argument before the district court, and thus it is waived. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) ("If a party wishes to preserve an argument for appeal, the party 'must press and not merely

3

No. 10-20389

168 F.3d 880, 881-82 (5th Cir. 1999). However, we review a district court's weighing of the *Intel* factors for abuse of discretion. *Intel*, 542 U.S. at 255; *Clerici*, 481 F.3d at 1334. The plaintiffs raise a number of challenges to the district court's analysis of the *Intel* factors.[3] First, they argue that allowing Chevron to seek discovery from 3TM in the United States is inappropriate, since Cabrera is subject to the jurisdiction of the Ecuadorian court and Chevron could ask him to turn over any 3TM documents he reviewed. Second, the plaintiffs assert that Chevron is attempting to evade restrictions on discovery in Ecuador. They claim that the Ecuadorian court has allegedly not granted Chevron's requests for copies of documents that the plaintiffs provided to Cabrera. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006) (denying § 1782(a) request because applicant had demanded same documents before foreign tribunal).

In our view, the district court did not abuse its discretion. First, we find it senseless to require Chevron to seek 3TM documents from Cabrera, given the plaintiffs' denial that they provided any such documents to Cabrera and Cabrera's interest in denying receipt of 3TM material. As noted above, the Ecuadorian court ordered Cabrera to disclose all of the source material for his report. Consequently, if Cabrera relied on 3TM documents but did not disclose

---

intimate the argument during the proceedings before the district court.'" (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n. 4 (5th Cir. 1996)).

[3] The Supreme Court has suggested that district courts should consider (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," since "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid," (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (iv) whether the § 1782(a) request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

them, he is unlikely to turn them over now, as doing so would reveal he violated the Ecuadorian court's order. Second, the record does not clearly demonstrate that Chevron is attempting to evade restrictions on discovery in Ecuador. It is not clear that Chevron ever sought 3TM documents from Cabrera in Ecuador.[4] In any event, even if a request for 3TM documents were pending before the Ecuadorian court, the district court's decision to grant § 1782(a) relief would not be an abuse of discretion. The plaintiffs have not argued that Chevron's request is unduly burdensome, and furthermore, there has been no "clear directive" from the Ecuadorian court that it "would reject evidence" produced in the United States. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). The parties have informed the Ecuadorian court of the present § 1782(a) proceedings in the United States, but the court has apparently been passive in response, neither lauding nor condemning Chevron's actions. In these circumstances, the district court did not abuse its discretion in granting Chevron's § 1782(a) request.

## III.

Even if it is proper to allow discovery under § 1782(a), Chevron may not discover information that is immune from discovery. Section 1782(a) provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a) (2006). Furthermore, the provision's legislative history suggests that this protection extends to "privileges recognized by foreign law." S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790.

---

[4] In February 2008, Chevron did request that the Ecuadorian court provide it with copies of documents that the plaintiffs had filed with the court for submission to Cabrera and that the plaintiffs had alleged came from "various Ecuadorian public institutions." The Ecuadorian court has apparently not yet ruled on this request. However, Chevron's February 2008 request does not appear to have included a demand for documents created by the plaintiffs' U.S. consultants.

We review "factual findings underlying a privilege ruling for clear error and the application of legal principles de novo." *United States v. Auster*, 517 F.3d 312, 315 (5th Cir. 2008).

The plaintiffs argue that 3TM is shielded from discovery under the work product doctrine and the protection accorded non-testifying consultants by Federal Rule of Civil Procedure 26(b)(4)(B).[5] However, the district court ruled that this protection would be waived for any 3TM documents that were passed to Cabrera. We agree. Although work product immunity is not automatically waived by disclosure of protected material to third parties, disclosure does waive protection if it "has substantially increased the opportunities for potential adversaries to obtain the information." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2010).[6] In this case, the disclosure of 3TM documents to Cabrera, a court-appointed expert, would waive immunity for disclosed documents and possibly others as well. Rule 26(a)(2)(B) provides that when experts testify before a court, they must submit a report disclosing "the data or other information" they have considered in reaching their conclusions. Fed R. Civ. P. 26(a)(2)(B)(ii). Relying on this rule, courts have held that when the work product of non-testifying consultants is provided to testifying experts, immunity is waived for disclosed work product. *See, e.g., Reg'l*

---

[5] *See* Fed. R. Civ. P. 26(b)(4)(B) (providing that in most circumstances, "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial"); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (recognizing that reports are protected by work product doctrine when they are "prepared in anticipation of litigation by a consulting expert who was specially employed by . . . attorneys in preparation for trial and who was not expected to be called as a witness"). The plaintiffs also assert that 3TM is protected from discovery because it was retained to assist in a confidential mediation, but they did not raise this argument before the district court. It is therefore waived. *See Keelan*, 407 F.3d at 340.

[6] *See also Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1982) ("A claim of work product immunity is lost when the attorney discloses the information to the court voluntarily.").

*Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 717 (6th Cir. 2006).[7] Since Cabrera is a testifying expert, the district court correctly determined that disclosure of documents to Cabrera would waive immunity from discovery under U.S. law.[8]

The plaintiffs also contend that 3TM is protected from discovery under Ecuadorian law. As noted above, the legislative history of § 1782(a) suggests that parties may rely on foreign privileges to shield information from discovery in the United States. In our view, however, to avoid "'speculative foray[s] into legal territories unfamiliar to federal judges,'" parties must provide "'authoritative proof'" that a foreign tribunal would reject evidence "because of a violation of [an] alleged [foreign] privilege." *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77 (2d Cir. 1997) (quoting *Euromepa*, 51 F.3d at 1099-100). In this case, although the plaintiffs have submitted an affidavit from an Ecuadorian attorney suggesting that the discovery sought by Chevron would not be available in Ecuador, they have not pointed to any "judicial, executive or legislative declaration" that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms. *Euromepa*, 51 F.3d at 1101. Indeed, the most applicable evidence directly contradicts the plaintiffs' claim that Ecuadorian law establishes a privilege in these circumstances, as the Ecuadorian court ordered Cabrera to release to Chevron "all the documents that serve[d] as support or a

---

[7] We note that there is some dispute concerning whether Rule 26 mandates the disclosure of "attorney work product" that has been "provided to a testifying expert." *In re Teleglobe Commc'ns Corp.*, 392 B.R. 561, 575-76 (Bankr. D. Del. 2008). To the extent this issue arises later in these proceedings, the district court may address it on remand.

[8] Chevron has also argued that Cabrera is the equivalent of a court, in that he is similar to a special master, and that consequently 3TM is itself a testifying expert. If this were accepted, the provision of 3TM documents to Cabrera would also waive immunity from discovery, since testifying experts must disclose "the data or other information" they consider in reaching their conclusions. *See* Fed R. Civ. P. 26(a)(2)(B)(ii).

source of information" for his report.  Consequently, the plaintiffs have not established that Ecuadorian law shields 3TM from discovery.

Even if the disclosure of 3TM documents to Cabrera would waive immunity from discovery, the plaintiffs protest that there is no direct evidence that such a waiver took place.[9]  Chevron bears the burden of demonstrating that a waiver of work product protection occurred,[10] and we agree with the plaintiffs that clear evidence of a waiver is lacking.[11]  Nevertheless, we believe it was appropriate for the district court to order a foundational deposition in these circumstances, as such a deposition may be used to determine whether any waiver took place.  Courts have previously held that "'foundational' matters," such as "the date, recipients, and the 'general nature' of [a] communication" are

---

[9] The district court seems to have concluded that the plaintiffs conceded in their briefing that Cabrera received documents from 3TM, but this is incorrect.  As such, there is no finding of fact that a waiver took place, to which we would defer absent clear error.  *See Auster*, 517 F.3d at 315 ("[F]actual findings underlying a privilege ruling [are reviewed] for clear error . . . .").

[10] *See Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) ("In contrast [to the attorney-client privilege], a party asserting work product immunity is not required to prove 'non-waiver.'").  Chevron argues that the plaintiffs, as the party claiming work product protection, bear the burden of demonstrating non-waiver.  It cites to *MIT v. United States*, a decision of the First Circuit that adopts this view.  129 F.3d 681, 686 (1st Cir. 1997).  However, to support this proposition, the First Circuit only cites authority concerning the attorney-client privilege.  *Id.* (citing *United States v. Wilson*, 798 F.2d 509, 512-13 (1st Cir.1986)).  The work product doctrine differs from the attorney-client privilege in that non-waiver need not be proven to invoke work product immunity.  *Johnson*, 191 F.R.D. at 642-43.

[11] Chevron's motion to supplement the record on appeal is DENIED.  Before oral argument, Chevron filed a motion to supplement the record with newly obtained video evidence concerning Cabrera's contacts with the plaintiffs and Stratus, the consulting firm that retained 3TM.  In *Gibson v. Blackburn*, we indicated that typically we will not "enlarge the record to include material not before the district court."  744 F.2d 403, 405 n.3 (5th Cir. 1984).  Nevertheless, we have suggested that we will supplement the record when consideration of particular evidence clearly reveals how a case should be disposed.  *Id.*  The evidence submitted by Chevron is only tangentially related to this case.  It does not reveal (i) whether Cabrera received any 3TM documents, or (ii) whether Cabrera fraudulently concealed his reliance on these documents, thus possibly triggering the crime-fraud exception to work product immunity.

not protected by immunity from discovery. *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 693 (S.D. Fla. 2009).[12] Thus, the district court did not err in ordering a foundational deposition, despite the lack of definite evidence of a waiver.

Although we approve of the course chosen by the district court, we believe the terms that the court set for the deposition should be further refined. As already explained, the court ordered that 3TM's deposition be limited to "whether 3TM collaborated with Cabrera" and "the extent to which 3TM recognizes its work in the Cabrera report." However, the district court did not clearly specify the level of similarity between the Cabrera report and 3TM work product necessary to show that a waiver of immunity from discovery occurred. Depending on 3TM's interpretation of the district court's order, it could conceivably "recognize" material in the Cabrera report as its own that actually has another provenance. As such, for remand, we stress that similarities between the Cabrera report and 3TM work product are only relevant to the extent that they collectively show that Cabrera more likely than not incorporated 3TM work product into his report. We also note that if disputes between the parties persist after the foundational deposition, the district court may review the Cabrera report and any relevant 3TM work product *in camera* to help it determine whether a waiver occurred.[13]

---

[12] *See also Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 561 (D. Kan. 2009) (holding that deponent "may indeed have a duty to answer foundational questions about [allegedly protected] documents, e.g., their general subject matter, their purpose, dates of preparation, transmittal and receipt, and identities of persons privy to them").

[13] Chevron has asked us to rule that discovery need not be limited to the specific 3TM documents that Cabrera received. We leave this issue to be resolved on remand. The district court has not yet definitively ruled on the scope of discovery; it explained that it would return to this issue after the foundational deposition. Furthermore, any decision we reach on the scope of discovery would be mooted if the foundational deposition reveals that no waiver occurred. The district court can determine the proper scope of discovery once it has established whether any waiver took place.

No. 10-20389

IV.

Thus, we AFFIRM the district court's order requiring 3TM to submit to a foundational deposition, and REMAND this case for further proceedings consistent with this opinion.