# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2020

Lyle W. Cayce
Clerk

No. 20-10049

Banca Pueyo SA; Banco BIC Portugues SA; Banco Bilbao Vizcaya Argentaria SA; BlackRock, Incorporated; Carlson Capital, L.P.; CQS (UK), L.L.P.; DNCA Finance; Pacific Investment Management Company, L.L.C.; River Birch Capital, L.L.C.; TwentyFour Asset Management, L.L.P.; VR-Bank RheinSieg eG; Weiss Multi-Strategy Advisers, L.L.C.; York Capital Management Global Advisors,

*Petitioners—Appellees,*

*versus*

Lone Star Fund IX (US), L.P.; Lone Star Global Acquisitions, L.L.C.; Hudson Advisors, L.P.,

*Respondents—Appellants.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-MC-100

Before Graves, Costa, and Engelhardt, *Circuit Judges.*

Gregg Costa, *Circuit Judge*:

A person may seek the assistance of a federal district court to obtain evidence for use in a foreign proceeding. 28 U.S.C. § 1782. Banca Pueyo and

No. 20-10049

other parties invoked section 1782 to obtain discovery from three Texas-based entities for use in Portuguese proceedings. After the district court authorized the requested subpoenas and denied a first motion to quash, the respondents appealed. But the respondents' second motion to quash the subpoenas remained pending. Because the district court has not yet determined the scope of discovery, this appeal is interlocutory. We therefore lack jurisdiction to consider it.

## I.

Section 1782 is the most recent version of statutes that for more than 150 years have "provide[d] federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248–49 (2004). On receiving a section 1782 application, the district court first decides whether the petitioner meets the statutory requirements. *Texas Keystone, Inc. v. Prime Natural Resources*, 694 F.3d 548, 553 (5th Cir. 2012). If so, then the court may but need not order the discovery. *Intel*, 542 U.S. at 247, 255, 264. A number of considerations influence that discretionary call. *Id*. at 264–65; *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 n.3 (5th Cir. 2010).[1]

---

[1] The discretionary *Intel* factors include:

(i) whether the person from whom discovery is sought is a participant in the foreign proceeding . . . ,

(ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,

(iii) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and

(iv) whether the § 1782(a) request is unduly intrusive or burdensome.

No. 20-10049

This section 1782 request seeks assistance in foreign litigation relating to the European financial troubles of the past decade. In 2014, the large Portuguese bank Banco Espírito Santo (BES) reported losses of over €3.5 billion. To try and bail out BES, the Bank of Portugal transferred most of BES's assets and liabilities—including notes on which the bank owed billions of euros—to the newly incorporated Novo Banco, which received a large capital injection from the government. But a year later, the Bank of Portugal sent some of those notes back to BES. The petitioners hold some of these notes or are agents of entities that do. They claim that the retransfer "wiped out" the notes' value—because BES is insolvent, it is unlikely the noteholders will get paid. Civil and criminal proceedings challenging the lawfulness of the retransfer are pending in Portugal.

Once the retransfer took more than €2 billion in notes off the books of Novo Banco, the bank was sold. That is where the Texas-based targets of the section 1782 discovery come into the picture. Lone Star Fund IX, a private equity fund, obtained an ownership interest in the entity that acquired most of Novo Banco. The other respondents had an advisory role in the acquisition. As a result of these entities' roles in the acquisition of Novo Banco, petitioners believe they possess information (acquired during due diligence or otherwise) about the retransfer.

So petitioners filed this section 1782 proceeding in Dallas federal court seeking documents and depositions from the three respondents. The district court granted the application *ex parte* and authorized service of the subpoenas. After reviewing the statutory requirements and discretionary *Intel* factors, the court concluded that discovery was appropriate. But the

---

*Ecuadorian Plaintiffs*, 619 F.3d at 376 n.3 (quoting *Intel*, 452 U.S. at 264–65).

No. 20-10049

court noted that respondents could file a motion to quash if they wanted "to object to this Order or to the subpoenas issued."

Respondents did just that. The magistrate judge denied their first motion to quash. Reassessing the statutory requirements and finding them satisfied, the magistrate judge also declined to upset the initial weighing of the discretionary factors. The magistrate judge also held that respondents had not identified specific discovery requests that were overly burdensome, but invited them to file a second motion to quash with any objections that remained after the parties conferred. The district court denied objections to the magistrate judge's ruling.

Respondents then appealed to this court both the original *ex parte* order and the denial of their first motion to quash. Petitioners filed a motion to dismiss the appeal, arguing that the challenged rulings were interlocutory. A motions panel carried that motion with the case for consideration after full briefing.

Meanwhile, litigation continued back in district court. Just a week after filing this appeal, respondents filed their second motion to quash the subpoenas. The magistrate judge held a hearing on that motion. One week before we heard oral argument, the magistrate judge entered a 52-page ruling. It granted in part and denied in part the motion to quash. Among other things, the order limits eight of the nine document requests to certain time periods and states that the court will not permit discovery of a memo in respondents' possession that purportedly contains trade secrets. The order also holds that respondents need not produce any documents in the possession of their overseas affiliates.

Even the magistrate's lengthy order has not ended the trial court activity. This time petitioners are unhappy with parts of the recent ruling,

having filed a motion for reconsideration as well as objections with the district court. Those motions await a response and ruling.

Despite the ongoing developments in the district court, this appeal of the earlier rulings remains.

## II.

Courts of appeals have jurisdiction only over "final decisions" of district courts. 28 U.S.C. § 1291. Generally, a decision is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981). Respondents invoke this traditional "finality" standard, arguing that the question is whether the appealed orders "effectively resolved the case or controversy." *In re Furstenberg Fin. SAS v. Litai Assets LLC.*, 877 F.3d 1031, 1033–34 (11th Cir. 2017). Most circuits use this framework, recognizing that a section 1782 proceeding is a stand-alone case with discovery as the end goal and thus unlike a discovery dispute that arises as one piece of a domestic lawsuit that will end with a merits ruling. *Id.*; *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 561–62 (7th Cir. 2018); *In re Naranjo*, 768 F.3d 332, 346 (4th Cir. 2014); *In re Republic of Ecuador*, 735 F.3d 1179, 1182–83 (10th Cir. 2013).

Although a traditional finality standard may make sense for section 1782 cases, it is odd that respondents are the ones urging it. By no measure did the ruling on the first motion to quash "leave[] nothing for the court to do." *Catlin*, 324 U.S. at 233. The district court had a lot left to do, enough that the magistrate just issued a 52-page decision that is generating additional motions practice in the district court. No court has exercised appellate jurisdiction over a section 1782 case when a motion to quash that might limit the scope of discovery remained pending in the trial court. Rather, courts have allowed appeals only after the district court had "affirmatively decided

No. 20-10049

the proper scope of discovery." *Republic of Ecuador*, 735 F.3d at 1182–83; *see also Furstenberg*, 877 F.3d at 1033–34 (allowing appeal after court definitively resolved motion to quash).[2] The district court had not yet resolved the scope of discovery when this appeal was filed, so we would not have jurisdiction under the typical finality inquiry.

But our court has taken a different approach when considering the appealability of section 1782 rulings. Despite the differences between a section 1782 matter in which discovery is everything and a regular lawsuit in which discovery is only a preliminary phase of the case, we have considered section 1782 appeals under the collateral order doctrine that decides when discovery orders in regular litigation may be appealed. *Texas Keystone*, 694 F.3d at 552.[3] Because the collateral order doctrine allows some appeals before a case is over, this framework at least gives respondents a chance at appellate jurisdiction.

In the end, though, respondents come up short even under the collateral order doctrine. We have jurisdiction over a nonfinal order when it is (1) conclusive as to the subject addressed, (2) resolves an "important question[] completely separate from the merits," and (3) is "effectively

---

[2] The Seventh Circuit decision respondents describe as their "best case" actually supports the idea that appeals are proper after a court "conclusively denie[s]" relief. *Heraeus Kulzer*, 881 F.3d at 563. In *Heraeus Kulzer*, the petitioner asked to modify a protective order governing the production the court had ordered several years earlier. The court denied the motion to modify. *Id.* at 556. Petitioner did not appeal. *Id.* at 558. A year later, it filed a second unsuccessful motion to modify. *Id.* It only sought to appeal after filing a and losing third motion to modify. *Id.* at 559. The court held that it should have appealed after the initial denial of the motion to modify as that had fully resolved the issue. *Id.* at 563.

[3] We appear to be the only circuit that applies the collateral order doctrine in this context. Under the rule of orderliness, we must apply that framework regardless of our outlier status.

unreviewable on appeal from a final judgment." *Digital Equipment Corp v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1992). For the reasons we have already explained, the initial granting of the application and denial of the first motion to quash do not conclusively determine whether, and to what extent, discovery might be required.

The recent ruling on the second motion to quash, which curtails discovery in significant respects, drives home the point that the orders before us are preliminary. That decision also highlights the problem with appellate review of decisions that are not conclusive. One of the main issues respondents want us to tackle is whether section 1782 subpoenas can require U.S.-based parties to produce discovery their affiliates possess in other countries. Although the two courts of appeals to consider the issue have rejected an absolute bar on extraterritorial discovery, some district courts have applied one. *In re del Valle Ruiz*, 939 F.3d 520, 532 & n.15 (2d Cir. 2019) (noting split in district courts on the question); *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016). Assuming last month's ruling that it is too burdensome for respondents to produce documents located in Europe sticks, the difficult legal question about extraterritoriality will be moot. Had we addressed the question in reviewing a preliminary district court ruling, our decision would have turned out to be advisory.

Respondents' failure to meet the first requirement of a conclusive resolution means we lack jurisdiction. But we also note their inability to meet the final requirement—that the issue will not be reviewable after a final decision—because it too exposes one of the concerns with interlocutory appeals. All the issues respondents raise, including the *ex parte* nature of the initial ruling, whether petitioners meet the statutory requirements, and evaluation of the discretionary *Intel* factors, will be reviewable in an appeal after the district court conclusively determines the scope of any discovery. *See, e.g.*, *Furstenberg*, 877 F.3d at 1033–35 (analyzing statutory requirements

of 1782 in appeal of order denying motion to quash).  Considering those questions now runs the risk of inefficient piecemeal appeals. *See Cunningham v. Hamilton Cty.*, 527 U.S. 198, 209 (1999) (noting that the final judgment rule seeks to prevent the delays that result from piecemeal appeals).  Of course, if we were to rule at this interlocutory stage that petitioners did not meet the statutory requirements for section 1782 discovery, that would end the matter.  But the same would be true of interlocutory reversal of orders denying summary judgment.  Yet those are not allowed.  That is because the concern with interlocutory appeals arises from what happens when they are unsuccessful—they "undermin[e] 'efficient judicial administration' and encroach[] upon the prerogatives of district court judges . . . in managing ongoing litigation."  *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Firestone Tire*, 449 U.S. at 374).

While we readily conclude that this appeal was premature, we recognize that the unusual nature of section 1782 proceedings results in some uncertainty about when to appeal.  Indeed, respondents acknowledged that this might not be the right time, but they appealed now in an abundance of caution.  They also worry that an appeal may never be ripe due to the possibility of a future dispute over privilege.  But appellate jurisdiction is a "practical" determination, not a speculative one. *Microsoft Corp. v. Baker*, 137 S.Ct. 1702, 1712 (2017).  Once the district court fully resolves the second motion to quash, the scope of section 1782 discovery should be definitively resolved. *See Republic of Ecuador*, 735 F.3d at 1183 (holding that once the district court "affirmatively decided the proper scope of discovery" the order was final even if "subject to ongoing dispute about its coverage and scope before a magistrate judge").  When that conclusive determination comes, an appeal would be appropriate.

No. 20-10049

* * *

Petitioners' motion to dismiss is GRANTED.  We DISMISS the appeal for lack of jurisdiction.