In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1674

HERAEUS KULZER, GMBH,

*Plaintiff-Appellant,*

*v.*

BIOMET, INC., *et al.*,

*Defendants-Appellees,*

and

ESSCHEM, INC.

*Intervenor-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:09-cv-530 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 9, 2018 — DECIDED FEBRUARY 1, 2018

Before FLAUM, KANNE, and ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge*. Plaintiff-appellant Heraeus Kulzer, GmbH ("Heraeus") brought this action in the Northern District of Indiana under 28 U.S.C. § 1782. That statute allows a

party to file a petition in a federal district court to obtain discovery for use in a foreign proceeding. Here, Heraeus sought to obtain discovery from defendants-appellees Biomet, Inc. and Biomet Orthopedics, LLC (collectively, "Biomet") to use in its trade secret misappropriation case against Biomet in Germany. Biomet produced discovery subject to a series of stipulated protective orders that limited Heraeus's ability to use or disseminate certain discovery materials outside of the German proceeding and this § 1782 action.

After obtaining discovery from Biomet and submitting it to the German court, the German court ruled in Heraeus's favor and enjoined Biomet from manufacturing or distributing any products developed using the misappropriated information. In its ruling, the German court cited and quoted several documents that were produced in this § 1782 proceeding and thus subject to the stipulated protective orders.

Suspicious that Biomet was continuing to sell products made with Heraeus's trade secrets outside of Germany, Heraeus subsequently brought actions in several other European countries to enforce the German judgment. Heraeus also filed three motions to modify the district court's protective orders in this § 1782 action. In those motions, Heraeus asked the district court to exclude the documents that the German court relied on from the scope of the protective orders and/or to impose restrictions on Biomet's internal use of those documents. Heraeus claims that these modifications are necessary so it may submit those documents to the foreign tribunals presiding over the European enforcement proceedings and protect its trade secrets. The district court denied all three motions.

Because Heraeus failed to timely appeal the district court's first and second orders denying the requested relief, we conclude that we lack jurisdiction to review those orders now. With respect to the district court's third and final order, we hold that the district court did not abuse its discretion by denying Heraeus's request to impose restrictions on Biomet's internal use of the documents it produced.

## I. Background

### A. The Alleged Trade Secret Misappropriation

Heraeus is a German company that specializes in the development and production of bone cements used in joint replacement surgery. Heraeus began developing and producing bone cements in the 1950s.

In the early 1970s, Heraeus contracted with Merck KGaA ("Merck"), a German pharmaceutical company, to distribute its bone cements. To help Merck obtain regulatory approval for its bone cements, Heraeus gave Merck confidential information. Merck was contractually obligated to use that information solely for the purpose of obtaining regulatory approval and to protect the information from disclosure.

In 1997, Merck entered into a joint venture with Biomet. In 2004, Merck sold its joint venture shares to Biomet without telling Heraeus. When Heraeus found out, it stopped delivering its bone cements to Biomet.

When the distribution relationship between Biomet and Heraeus ended in 2005, Biomet began manufacturing and selling bone cements that directly compete with Heraeus's products. After dominating the bone cement market for fifty years, Heraeus began losing its market share.

Heraeus sued Biomet in courts throughout Europe, alleging that Biomet developed its bone cements with Heraeus's proprietary information. Heraeus also claims that Biomet used the allegedly misappropriated information to help Esschem, Inc. ("Esschem")—a chemical company in Pennsylvania—create the copolymers that Biomet uses in its bone cements.

### B. The § 1782 Action

On December 30, 2008, Heraeus sued Biomet in Germany for trade secret misappropriation. Shortly thereafter, Heraeus commenced this proceeding in the Northern District of Indiana under 28 U.S.C. § 1782 to obtain discovery from Biomet.[1] In relevant part, that statute provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).

The Indiana district court initially denied the petition, but on appeal we reversed and remanded for the district court to oversee and manage the discovery process. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 599 (7th Cir. 2011) [hereinafter *Heraeus I*].

### C. Stipulated Protective Orders

On remand, Biomet agreed to produce responsive discovery materials pursuant to an amended protective order, which was agreed to by the parties and entered by the district court.

---

[1] Heraeus also filed a § 1782 proceeding against Esschem in the district court for the Eastern District of Pennsylvania. *In re Application of Heraeus Kulzer GmbH*, 2:09-mc-17-CMR (E.D. Pa. filed Jan. 29, 2009).

In recognition of the "highly competitive" bone cement industry, and to protect Biomet's trade secrets, that protective order allows Biomet to designate discovery materials as confidential. Once materials are designated as confidential, Heraeus may only use them in the German proceedings and in this § 1782 action, and may only disclose them to authorized individuals specified in the protective order. The amended protective order states that it does not "prevent the Biomet Respondents from disclosing or using in any manner or for any purpose their own Confidential Information."

In August 2011, the district court allowed Esschem to intervene to protect its interests because some of the discovery materials produced contained communications between Esschem and Biomet. After Esschem intervened, the parties agreed to, and the district court entered, a second amended protective order. That protective order allowed Heraeus to use certain documents in the German proceedings provided that the documents were treated as confidential by the German courts.

The district court periodically entered additional protective orders to address particular concerns as they arose. Each successive protective order supplemented prior protective orders.[2]

**D. The German Judgment**

Meanwhile, Heraeus submitted the discovery it obtained in this § 1782 proceeding to the German court as evidence to

---

[2] The court entered a third amended protective order in December 2011; a fourth amended protective order in February 2012; a fifth amended protective order in August 2012; a sixth amended protective order in March 2013; and a seventh amended protective order in September 2014.

support its trade secret misappropriation claims against Biomet. On June 5, 2014, the German court held that Biomet misappropriated Heraeus's trade secrets and used them to guide Esschem in creating the copolymers that Biomet uses in its bone cements.[3] In its ruling, the German court described and quoted nine documents, which the parties refer to as the "Cited Documents." Those documents contain correspondence between Biomet and Esschem employees about laboratory tests performed on some of Heraeus's bone cement products. The German court determined that portions of this correspondence contained Heraeus's trade secrets. Accordingly, it enjoined Biomet from manufacturing, offering, or distributing any bone cement products developed using the misappropriated information.

### E.  European Enforcement Proceedings

Heraeus claims that, despite the German court's injunction, Biomet continues to sell bone cement products that were made using misappropriated information in other European countries. Accordingly, Heraeus filed proceedings in several European countries—France, the Netherlands, Austria, Italy, Belgium, Finland, Denmark, Norway, and the United Kingdom—to enforce the German judgment.[4]

---

[3] The German Federal Supreme Court affirmed this judgment on June 16, 2016.

[4] Heraeus also filed another lawsuit against Esschem in the Eastern District of Pennsylvania to stop the continued production of the copolymers used in Biomet's bone cements, which it claims Esschem continues to produce and ship to Biomet in Europe. The district court presiding over that case granted summary judgment to Esschem after finding that

**F. The District Court Excludes the German Judgment from the Protective Orders' Restrictions**

Because the German judgment described and quoted portions of discovery materials that were subject to the protective orders, Heraeus asked the district court to clarify whether the German judgment was itself subject to the protective orders. To the extent it was, Heraeus asked the district court to exclude the German judgment from the scope of the protective orders so it could use the judgment in the European enforcement proceedings.

The district court granted Heraeus's motion on September 8, 2014. In doing so, it found "good cause for the continued protection of Heraeus's trade secrets and recogniz[ed] Heraeus's strong interest in enforcing the terms of the Judgment and protecting its trade secrets." Accordingly, the district court excluded the German judgment from the restrictions imposed by the protective orders so Heraeus could submit the judgment to foreign tribunals "as needed to enforce its rights and protect its trade secrets from further use or misappropriation."

**G. Heraeus's First Motion to Modify the Protective Orders**

Heraeus eventually determined that it would also need to submit the Cited Documents to some of the tribunals presiding over the European enforcement proceedings. However, the parties were operating under the seventh amended protective order, which expressly covered the Cited Documents

---

Heraeus's claims were time barred by the applicable statutes of limitations. *See Heraeus Med. GmbH v. Esschem, Inc.*, No. 2:14-cv-5169, 2018 WL 573113 (E.D. Pa. Jan. 26, 2018).

and thus imposed restrictions on Heraeus's ability to use the documents.

On July 21, 2015, Heraeus moved to modify the protective orders to exclude the nine Cited Documents. Heraeus argued that case-by-case amendments to the protective orders were no longer "workable" because "Heraeus needs the flexibility to submit the Cited Documents as appropriate and to react quickly to the ever-changing enforcement situation." Heraeus further argued that continued protection of the Cited Documents was not necessary because: (1) the district court already excluded the German judgment from the protective orders, and the judgment quotes the Cited Documents extensively; (2) the German court determined that the trade secrets and confidential information described in the Cited Documents belong to Heraeus; and (3) Heraeus will protect the information in the Cited Documents from public disclosure. In the proposed order attached to that motion, Heraeus also asked the court to restrict Biomet and Esschem's use of those documents.

On September 22, 2015, the district court denied Heraeus's motion. In its order, the district court concluded that Heraeus had the burden of showing good cause for modification of the protective orders, and found that Heraeus had not met its burden. The district court applied the four-factor test that district courts in this Circuit regularly use when resolving motions to modify protective orders.

With respect to the first factor—the nature of the protective order—the district court noted that stipulated blanket protective orders like the one at issue here are "more difficult to modify or vacate." However, the court also expressed concern that "the proceedings in this court shouldn't limit

Heraeus's ability to avail itself of whatever the German judgment gives it." And, because Biomet and Esschem represented that "they would be agreeable to less drastic alternatives for use of the nine documents," the court concluded that "this factor favors at least a partial modification of the protective orders."

The district court held that the second factor—foreseeability—was "a neutral factor." Biomet and Esschem argued that Heraeus should have anticipated the need to file enforcement actions in other jurisdictions when it agreed to the protective orders because Heraeus knew that Biomet sold its bone cement products outside Germany. On the other hand, Heraeus argued that Biomet had shifted its operations to avoid the German court's jurisdiction. Ultimately, the district court was "unable to determine the import of this factor."

The district court found that the third factor—the parties' reliance on the protective order—weighed against modification. The district court noted that "[t]he parties have been cooperating in the discovery process for the past four years under the terms of the various amendments to the protective orders." The district court also relied on the fact that "Heraeus was able to obtain a judgment in the German proceedings while the parties operated under the terms of the protective orders for the past four years."

Finally, the district court determined that the fourth factor—good cause—also weighed against modification. Although Heraeus claimed that it might need to submit the Cited Documents to initiate enforcement proceedings in the future, the court noted that Heraeus had already initiated enforcement proceedings in the Netherlands, France, and the United Kingdom without having to submit the Cited Documents.

Moreover, the court pointed out that "Heraeus has cited no instance where the current protective orders have impeded its pursuit of any foreign action."

However, the court concluded that Heraeus had shown good cause to shorten some of the time periods in which the parties were required to respond under the existing protective orders. Accordingly, the district court gave the parties until October 9, 2015 "to submit an amendment to the Seventh Amended Protective Order permitting Heraeus to pursue enforcement actions outside Germany in a timely fashion without publically disclosing the confidential information contained in the cited documents." The district court "strongly encourage[d] the parties to work together toward a compromise."

## H.  Eighth Amended Protective Order

Heraeus did not appeal the district court's September 22, 2015 order. Instead, it negotiated with Biomet and ultimately agreed to an eighth amended protective order that outlines how Heraeus may use the Cited Documents in the enforcement proceedings. Specifically, paragraph 5 of that protective order only allows Heraeus to submit the Cited Documents in enforcement proceedings if several confidentiality safeguards are in place. For example, paragraph 5 requires that court files discussing the Cited Documents are sealed from public view and prevents Heraeus from discussing the Cited Documents unless the courtroom is sealed.

In turn, paragraph 6 of that protective order outlines the procedure that Heraeus should follow "[i]n the event that Heraeus seeks to use the Cited Documents in an Enforcement Proceeding but cannot comply with one or more provisions

in this Eighth Amended Protective order." If the parties cannot reach an agreement, paragraph 6(d) permits them to request a telephone conference with the district court to resolve the dispute. The district court entered the eighth amended protective order on October 8, 2015.

## I. Heraeus's Second Motion to Modify the Protective Orders

About a year later, on November 10, 2016, Heraeus filed its second motion to modify the protective orders. Again, Heraeus asked the court to exclude the Cited Documents from the protective orders and to restrict Biomet's and Esschem's use of the Cited Documents. Heraeus argued that these modifications were necessary because Biomet had opposed its efforts to implement the paragraph 5 confidentiality safeguards in Belgium, Norway, and Denmark. As a result, Heraeus claimed that Biomet had prevented Heraeus from submitting the Cited Documents in those tribunals. Heraeus also raised many of the same arguments that it raised in its first motion to modify—namely, that the confidential information in the Cited Documents belonged to Heraeus and that Heraeus would take sufficient steps to protect the information from public disclosure.

On January 18, 2017, the district court denied Heraeus's motion. The court applied the same four-factor test as before and noted that "[m]uch of what Heraeus argues in its motion to modify are points that have been raised before." In addition, the court stressed that, "without changed circumstances, there are no grounds to alter [its] determination last year that the reliance factors 'weigh[] against modification.'" The court found that, contrary to Heraeus's assertion, "the evidence before the court doesn't show that Biomet used the terms of the

eighth amended protective order to obstruct court proceedings [in Belgium, Denmark, and Norway]." The district court further stated that, "[i]n Austria, the parties successfully negotiated a resolution to confidentiality issues by employing the procedure outlined in paragraph six of the eighth amended protective order," and "encourage[d] the parties to consider the paragraph six procedure as a resource to resolve confidentiality disputes related to the cited documents." The district court also rejected Heraeus's contention that the German judgment, which had since been affirmed by the German Supreme Court, warranted modification of the protective orders. The district court explained that, although the German court's factual findings were binding in other jurisdictions, this "doesn't get Heraeus across the finish line" because "issues of ownership, misappropriation, and violation of a trade secret are issues of law." Again, Heraeus did not appeal the district court's order.

## J.    Heraeus's Third Motion to Modify the Protective Orders

One month later, on February 17, 2017, Heraeus requested a telephone conference with the district court pursuant to paragraph 6(d) of the eighth amended protective order. In the alternative, Heraeus renewed its second motion to modify the court's protective orders.

In that motion, Heraeus argued that the proceedings in Belgium and Norway had been delayed as a result of Biomet's refusal to accept restrictions on its use of the Cited Documents. Heraeus attached correspondence between its counsel and Biomet's counsel in which Heraeus said that "[t]he crux of the confidentiality disputes in both proceedings [in Bel-

gium and Norway] is Biomet's reluctance to accept any restrictions on Biomet's use and disclosure of the Cited Documents." Heraeus also attached declarations from two of its attorneys involved in the litigation in Belgium and Norway, both of whom declared that the litigation was delayed because Biomet would not agree to restrictions upon its use and disclosure of the Cited Documents. In its response letter, Biomet said that "it has no objection to Heraeus's use of the Cited Documents in the identified 'Enforcement Proceedings,'" but refused to agree to restrictions on how it could use its own documents.

On March 1, 2017, the district court denied Heraeus's motion in its entirety. First, the court concluded that Heraeus was not entitled to a conference under paragraph 6(d) of the eighth amended protective order. The court explained that paragraph 6 "is triggered only when 'Heraeus seeks to use the Cited Documents in an Enforcement Proceeding but cannot comply with one or more provisions in the Eighth Amended Protective Order.'" Because Heraeus did not seek "permission to use the documents itself," but rather sought to "restrict Biomet's use of the documents," the court concluded that the eighth amended protective order did not apply.

The district court also denied Heraeus's alternative request to modify the protective order to restrict Biomet's use of the Cited Documents. Relying on the standard articulated in its prior rulings, the court concluded that "Heraeus has shown neither good cause nor changed circumstances" to modify "an agreed order that addresses different topics and which has governed the parties' handling of litigation in about ten nations for more than a year."

Lastly, the court noted that "it isn't clear that an order enjoining use of the fruits of discovery by the party from whom the discovery is sought falls within the scope of 28 U.S.C. § 1782." The court questioned whether it had "any authority to limit respondent's use of discovery material" in an action brought under § 1782. However, the court did not explicitly rule on this issue and acknowledged that the parties had not addressed it. It "assumed that, if presented with appropriate grounds, [it] would have authority to limit Biomet's use of the documents it produced under § 1782."

### K.  Appeal

On March 30, 2017, Heraeus filed a notice of appeal seeking review of the district court's March 1, 2017 order denying its third motion to modify the protective orders. Heraeus also asks us to review "all other orders underlying that decision," including the orders issued on September 22, 2015 and January 18, 2017.

## II. Discussion

### A.  Jurisdiction

First, we address the scope of our review on appeal. The parties agree that the district court's order from March 1, 2017 is a final decision over which this Court has appellate jurisdiction. However, they disagree about whether we may also review the "underlying orders" that were issued on September 22, 2015 and January 18, 2017.

Biomet and Esschem argue that those underlying orders were final and thus immediately appealable. Accordingly, they claim that Heraeus was required to appeal those decisions within thirty days after their issuance. Because Heraeus

did not file a notice of appeal until March 30, 2017—approximately seventeen months after the first order and seventy days after the second order—Biomet and Esschem say we lack jurisdiction to review those decisions.

On the other hand, Heraeus argues that these underlying orders were not final, and thus not immediately appealable, because they "did not fully and finally resolve the dispute over the use of and restrictions upon the Cited Documents, but instead … contemplated further action by the parties and the court." Nevertheless, Heraeus claims that we may review those underlying orders now as part of this appeal because they "are part of the final decision and were stepping stones in reaching the district court's ultimate conclusion."

### 1. Appealability of Discovery Orders In § 1782 Actions

Generally speaking, we have jurisdiction to review "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. A decision is "final" when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). A decision is not final, and thus not immediately appealable, if it is "tentative, informal or incomplete." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) ("So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal."). This final judgment rule ensures deference to trial court judges, prevents piecemeal appeals, and promotes efficient judicial administration. *Firestone*, 449 U.S. at 374.

Because discovery orders do not end the litigation on the merits, they are usually not final and thus not immediately

appealable. *See Heraeus I*, 633 F.3d at 593. However, in § 1782 actions the litigation on the merits occurs in a foreign tribunal, so "the only matter is discovery." *Id.* Because there is no underlying merits proceeding in the district court, "many of the concerns that make us reluctant to review discovery orders on an interlocutory basis disappear." *In re Naranjo*, 768 F.3d 332, 346–47 (4th Cir. 2014). Accordingly, we have exercised appellate jurisdiction over discovery orders in this context. *See, e.g., Heraeus I*, 633 F.3d at 593; *Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401, 403 (7th Cir. 2004). Our sister courts of appeals have done the same. *See, e.g., Naranjo*, 768 F.3d at 346–47; *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566–67 (9th Cir. 2011) (exercising appellate jurisdiction over district court's order denying motion for a protective order in § 1782 proceeding); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 & n.1 (3d Cir. 1999) ("Only the discovery dispute under 28 U.S.C. § 1782 is occurring in the United States. Therefore, because the underlying litigation is in [a foreign court], this discovery order is immediately appealable."); *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993).

### 2. *The Underlying Orders Were Final and Immediately Appealable*

With that in mind, we turn to the issue presented here: whether the underlying orders in this § 1782 action were final and immediately appealable. We conclude that they were for several reasons.

First, in its September 22, 2015 and January 18, 2017 orders, the district court conclusively denied Heraeus's motions to modify the protective orders. Indeed, the court stated mul-

tiple times throughout both of those orders that it was deny-ing the relief Heraeus sought—namely, to exclude the nine Cited Documents from the restrictions of the protective or-ders. Having conclusively denied the relief sought, those or-ders cannot fairly be characterized as "tentative, informal or incomplete." *Cohen*, 337 U.S. at 546.

In arguing the contrary, Heraeus mischaracterizes those orders. For example, Heraeus says that in the September 22, 2015 order, "the district court determined that 'at least a par-tial modification of the protective orders' was warranted." However, the district court actually said that just one of the four factors weighed in favor of partial modification. After de-termining that two of the remaining factors weighed against modification, and one was neutral, the court ultimately con-cluded that, "[o]n balance, Heraeus hasn't shown good cause to remove the nine named documents from the protective or-der." Accordingly, the court "DENIE[D] Heraeus's motion for modification of the protective orders."

Heraeus also argues that the underlying orders were not final because they contemplated future negotiations and pro-ceedings in the district court. Specifically, Heraeus points out that in the September 22, 2015 order the district court invited the parties to submit an amendment to the protective orders and "strongly encourage[d] the parties to work together to-wards a compromise." And in the January 18, 2017 order the district court "encourage[d] the parties to consider the para-graph six procedure as a resource to resolve confidentiality disputes related to the cited documents."[5]

---

[5] These statements confirm the district court's denial of Heraeus's mo-tions to modify the protective orders. The court instructed the parties to

However, the conclusion of all proceedings below is not a prerequisite to appealing a discovery order in a § 1782 action. Indeed, we have exercised appellate jurisdiction over a district court's order *granting* the plaintiff's motion to enforce a subpoena for documents under § 1782. *See Kestrel Coal*, 362 F.3d at 403. Such an order inherently contemplates future proceedings to manage the production of those documents. *See id.*[6] Other courts of appeals have similarly exercised appellate jurisdiction over orders granting discovery in § 1782 actions. *See*, *e.g.*, *Naranjo*, 768 F.3d at 347 (holding that the district

---

amend the time periods in the existing protective orders, which were "designed" for German litigation, so Heraeus could "pursue enforcement actions outside Germany in a timely fashion." This invited amendment implies what the district court already made explicit: the existing protective orders would continue to govern Heraeus's use of the Cited Documents in the enforcement proceedings. The district court's instruction to use the dispute resolution provided in paragraph six of the eighth amended protective order going forward similarly confirms that the protective orders would continue to apply to the Cited Documents.

[6] Therefore, Heraeus's reliance on *Kestrel Coal* is not persuasive. It is true that in *Kestrel Coal* we said "[o]rders [issued under § 1782] … are final and appealable because they dispose of all issues in the proceeding." 362 F.3d at 403. But we held that the district court's order was final and immediately appealable *despite* the obvious potential of future proceedings.

Heraeus's reliance on our language in *Heraeus I* is also misplaced. In that case, we said that the orders were final "because there [was] no pending litigation in the district court." *Heraeus I*, 633 F.3d at 593. We continued: "The court is finished with the matter—as the only matter is discovery—and when no further proceedings are contemplated, the court's last order, even if it is a discovery order, is an appealable final order." *Id.* However, in *Heraeus I* it was clear that the district court did not contemplate further proceedings because it had denied Heraeus's § 1782 petition. Thus, we were not confronted with the issue presented here—i.e., whether an order is appealable in this context if proceedings are ongoing.

court's order granting a motion to compel discovery under § 1782 was final and immediately appealable); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (same). In short, the procedural posture of these decisions strongly suggests that discovery rulings in § 1782 actions are final and immediately appealable even if proceedings are ongoing.

In addition, Heraeus's proposed definition of finality in this context would be difficult, if not impossible, to apply in practice. After all, it will not always be clear when the proceedings below have concluded in a § 1782 action. As Biomet and Esschem point out, it is not even clear in this case that the court's last order from March 1, 2017—which the parties agree is appealable—will put an end to the proceedings below, which have been ongoing for almost a decade. In effect, if we adopted Heraeus's approach, a district court order in a § 1782 proceeding would almost *never* be final and appealable.

The Tenth Circuit's reasoning in *In re Republic of Ecuador*, 735 F.3d 1179 (10th Cir. 2013), further suggests that discovery orders can be final and immediately appealable in a § 1782 action even if proceedings are ongoing. In that case, an intervenor appealed the district court's order granting a motion to compel discovery in a § 1782 action. *Id.* at 1182. While the appeal was pending, plaintiffs filed a second motion to compel discovery in the district court alleging that the defendant continued to withhold relevant documents. *Id.* The magistrate judge issued two more orders clarifying the scope of the initial order and compelling further production, but the district court never adopted those orders. *Id.* On appeal, the plaintiffs argued that the initial order was not a final decision for purposes of appellate jurisdiction because "further proceedings [are] still underway in the district court." *Id.* at 1183 (alteration

in original). However, the Tenth Circuit rejected this argument, holding that "a district court's § 1782 order can[] be 'final' [even] if subject to ongoing dispute about its coverage and scope before a magistrate judge." *Id.*

Heraeus's theory of finality would also undermine the purposes of the final judgment rule. The Supreme Court has said that "finality is to be given a practical rather than a technical construction." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1962)); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) (endorsing a "pragmatic approach to the question of finality"). Specifically, the Court has instructed us to construe the finality requirement "in line with the[] reasons for the rule"—namely, to "preserve[] the proper balance between trial and appellate courts, minimize[] the harassment and delay that would result from repeated interlocutory appeals, and promote[] the efficient administration of justice." *Baker*, 137 S. Ct. at 1712. On balance, those objectives support Biomet's position that the underlying discovery orders were final and immediately appealable. Of course, litigants should attempt to resolve discovery disputes through the district judge in the first instance. However, as explained *supra*, the district court conclusively denied the relief Heraeus sought in both its September 22, 2015 and January 18, 2017 orders. Instead of appealing those orders to this Court, Heraeus filed multiple repetitive motions in the district court. In doing so, Heraeus wasted valuable judicial resources and further delayed the efficient resolution of this case.

In sum, a discovery order issued in a § 1782 proceeding may be final and immediately appealable even if proceedings are ongoing. Here, the underlying orders were immediately

appealable because the district court conclusively denied the relief sought. Accordingly, Heraeus was required to file a notice of appeal within thirty days after those orders were issued. *See* Fed. R. App. P. 4(a)(1). Because Heraeus failed to do so, we lack jurisdiction to review those orders. *See Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) ("A timely notice of appeal is a prerequisite to appellate review." (quoting *McCarty v. Astrue*, 528 F.3d 541, 544 (7th Cir. 2008))).

### 3. The Underlying Orders Do Not "Merge" With the Final Order On Appeal

Next, Heraeus argues that we may still review the underlying orders as part of this appeal because they were "stepping stones in reaching the district court's ultimate conclusion." Put differently, Heraeus claims that "[t]he Final Order is cumulative, and the interlocutory Underlying Orders merge with it on appellate review."

Heraeus is correct that, in the typical case where a party appeals the final judgment, we may review "all decisions that shaped the contours of that judgment," including earlier interlocutory orders. *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1341 (7th Cir. 1990), *rev'd on other grounds*, 500 U.S. 90, 111 (1991). However, those principles do not apply to the atypical situation presented here.

To understand why, it is helpful to analogize to the collateral order doctrine. Under that narrow exception to the final judgment rule, we have jurisdiction to immediately review interlocutory orders that conclusively resolve an important issue that is "conceptually separate from the merits" and "effectively unreviewable on an appeal from a final judgment." *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085,

1088–89 (7th Cir. 2014). Critically, the Supreme Court has said that collateral orders do not "merge[] in [the] final judgment" because they "[do] not make any step toward final disposition of the merits of the case." *Cohen*, 337 U.S. at 546. Indeed, if we waited until final judgment to review such orders, it would be "too late" and the appellant's "rights … will have been lost, probably irreparably." *Id.*

The same reasoning applies to discovery orders in § 1782 actions. As explained *supra*, § 1782 actions are unique because there is no litigation on the merits. Rather, § 1782 is just a mechanism to obtain discovery. As a result, any orders issued in this context will necessarily be separate from the merits of the underlying litigation. For that reason, we have effectively carved out an exception to the final judgment rule in this context to allow for appellate review. Like reviewable collateral orders, discovery orders in § 1782 actions do not take steps to resolve the litigation on the merits. Thus, the underlying orders are immediately appealable and do not merge with the final judgment on appeal.

    4.  *The March 1, 2017 Order Does Not Encompass Both Issues Raised in This Appeal*

Finally, Heraeus argues that "it effectively does not matter whether the Court reviews only the Final Order or also the Underlying Orders, because the Final Order encompasses and finally resolves all of the issues on appeal." Heraeus is wrong.

In this appeal, Heraeus argues that the district court erred in two ways: (1) by refusing to exclude the Cited Documents from the scope of the protective order; and (2) by refusing to impose restrictions on Biomet and Esschem's use of the Cited

Documents. In its first and second motions to modify the protective order, Heraeus asked the court for both forms of relief.

But Heraeus did not ask for the same relief in its third motion. Heraeus fashioned that motion as a "notice of changed circumstances and renewed motion." Heraeus argues that, by expressly renewing its second motion, it renewed its request to exclude the Cited Documents from the restrictions in the protective orders. However, with the exception of this single statement about renewing its second motion, nothing in the third motion asks the district court to remove the Cited Documents from the scope of the protective order.

Instead, the third motion focused on Biomet's refusal to accept restrictions on its use of the Cited Documents. Indeed, in the correspondence between Heraeus's counsel and Biomet's counsel that was attached to the third motion, Heraeus stated that "[t]he crux of the confidentiality disputes in both proceedings [in Belgium and Norway] is Biomet's reluctance to accept any restrictions on Biomet's use and disclosure of the Cited Documents."

Moreover, at the hearing on the third motion, Heraeus's counsel said:

> All we're hoping the Court can do is … either mediate some kind of solution here or enter a limited order that prevents the further disclosure publically of the cited documents … once they are produced to the Belgium and Norwegian courts and restricts Biomet from further disseminating those documents within Biomet on a going-forward basis for purposes other

> than this litigation, and that's all we're really
> asking for.

Based on this representation, the district judge said: "[I]t seems … we're on a different part of the playing field than we've been before." The court explained: "[W]hat we've been dealing with before with respect to several countries is what use Heraeus can make of these documents because Heraeus said it needed to put these documents in front of courts in order to protect their rights and needed the authority to do that." The court continued: "[W]e're at a different place, because now it appears to me that Heraeus is asking that Biomet's use of the documents be restricted when they weren't before and apparently didn't have to be before in order to get us through the first wave of countries." The district judge proceeded to ask Heraeus's counsel: "Where am I going wrong here?" Heraeus's counsel responded that the district judge was "not too far off base," but clarified that it had also asked to impose restrictions on Biomet's use in its previous two motions. If Heraeus was still seeking to exclude the Cited Documents from the scope of the protective orders as it had in previous motions, Heraeus's counsel could have corrected the district court's misconception at this point in time. Instead, Heraeus's counsel confirmed that it was just seeking to restrict Biomet's use of the Cited Documents.

In sum, Heraeus did not ask the district court to exclude the Cited Documents from the scope of the protective orders in its third motion, and it confirmed at the hearing on that motion that it was simply seeking to restrict Biomet's use of the Cited Documents. As a result, the district court's final order of March 1, 2017 does not address whether to exclude the

Cited Documents from the scope of the protective orders. Rather, it only addresses whether the eighth amended protective order should be amended to impose restrictions on Biomet's use of the Cited Documents. We therefore limit our review to that issue.

### B. The District Court Did Not Abuse Its Discretion

"The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Cty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Moreover, "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* (quoting *Rhinehart*, 467 U.S. at 36). Thus, we review a district court's discovery decisions for abuse of discretion. *Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646, 664 (7th Cir. 2013) (noting that our review is "extremely deferential"). In this context, a district court abuses its discretion if: "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (quoting *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)).

Heraeus argues that the district court abused its discretion by: (1) applying the wrong legal test; (2) placing the burden on Heraeus to show good cause to modify the protective orders; and (3) concluding that modification was not warranted under the four-factor test. We address each of these arguments in turn.

### 1. *The District Court Applied the Correct Legal Test*

The district court applied the four-factor test that courts in this Circuit regularly use when resolving motions to modify protective orders. *See, e.g., Romary Assocs., Inc. v. Kibbi, LLC*, No. 1:10-cv-376, 2012 WL 32969, at *1 (N.D. Ind. Jan. 6, 2012); *Chi. Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 276 F.R.D. 237, 239 (N.D. Ill. 2011); *Braun Corp. v. Vantage Mobility Int'l, LLC*, 265 F.R.D. 330, 332 (N.D. Ind. 2009); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006). Under that test, courts consider the following four factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Chi. Mercantile Exch.*, 276 F.R.D. at 239 (quoting *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, Nos. 05-cv-4120, 05-cv-5164, 2011 WL 148252, at *3 (N.D. Ill. Jan. 18, 2011)).

Heraeus argues that this test does not apply where a party seeks to modify the restrictions on a discrete group of documents. Although Heraeus does not directly identify an alternative legal test, it claims that the district court should have followed our decision in *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994). In that case, the district court denied a motion to modify a stipulated protective order that prevented one of the parties from using a deposition in another proceeding before the International Trade Commission ("ITC"). *See id.* at 855–58. On appeal, we concluded that the non-party deponent "ha[d] tried to use the stipulated protective order and the [interim protective order] as shields to prevent highly relevant and nonconfidential information from

reaching the ITC," and we "refuse[d] to assist [it] with its effort." *Id.* at 860. We ultimately held that the district court should have granted the motion to modify the protective order to allow use of the deposition testimony in the ITC proceeding because this would prevent duplicative discovery and would not prejudice the non-movant's substantial rights. *See id.* at 861.

*Jepson* is distinguishable because Biomet is not using the protective orders as a shield to prevent the Cited Documents from being used in other tribunals. Although Heraeus claimed that Biomet was using the protective orders to obstruct proceedings in Belgium and Norway, the district court rejected that argument in its January 18, 2017 order. Specifically, the court found that "the evidence before [it] doesn't show that Biomet used the terms of the eighth amended protective order to obstruct court proceedings there."

The district court's finding was not clearly erroneous. Heraeus admits that it has been able to use the Cited Documents in several countries: Austria, Denmark, Finland, France, and Italy. Moreover, Biomet repeatedly stated—in its correspondence with Heraeus and at the hearing on these motions—that it did not have any objection to Heraeus's use of the Cited Documents in the European enforcement proceedings, but rather objected to restrictions on its own use of the Cited Documents. And, as the district court pointed out, "Heraeus conceded … that the confidentiality disputes might have been the result of confusion, rather than an effort by Biomet to obstruct." Therefore, *Jepson* does not apply.

>    2. *The District Court Properly Placed the Burden on Heraeus to Show Good Cause to Modify the Protective Order*

The district court correctly concluded that Heraeus, as the party seeking modification, has the burden of showing good cause to modify the protective order. *See, e.g., Braun*, 265 F.R.D. at 332 ("The party seeking to modify the protective order has the burden of demonstrating that good cause exists."); *Murata Mfg. Co.*, 234 F.R.D. at 179 (same); *Romary*, 2012 WL 32969 at *1 (same).

Nevertheless, Heraeus argues that, "[a]s the parties seeking protection for the Cited Documents, Biomet and Esschem bear the burden of showing, on a document-by-document basis, that the protection they seek is warranted." In support of this argument, Heraeus relies on cases that resolved motions to seal or unseal court documents. *See, e.g., Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002) (denying joint motion to maintain documents under seal); *United States v. Pickard*, 733 F.3d 1297, 1305 (10th Cir. 2013) (reversing district court's decision denying motion to unseal court records); *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 584 (N.D. Ill. 2004) (granting lead plaintiff's motion to unseal the district court record). Because there is a "strong presumption toward public disclosure of court files and documents," courts resolving such motions have placed the burden on the party seeking confidentiality to show good cause for keeping the documents from public view. *In re Bank One*, 222 F.R.D. at 585–86; *see also Baxter*, 297 F.3d at 548 (noting "[t]he strong presumption of public disclosure" for "materials that formed the basis of the parties' dispute and the district court's resolution"); *Pickard*, 733 F.3d at 1302 ("The party seeking to overcome the

presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011))).

Here, Heraeus is not asking to unseal the Cited Documents so the public can view them. To the contrary, Heraeus stressed throughout this litigation that it wants to *prevent* public disclosure of the Cited Documents. Thus, the presumption in favor of public access to court documents is not implicated. Absent this presumption, the district court properly placed the burden on Heraeus to show good cause to modify the stipulated protective order.

### 3. *The District Court Did Not Abuse Its Discretion In Applying The Four-Factor Test*

Lastly, the district court did not abuse its discretion by concluding that Heraeus had not met its burden under the four-factor test to warrant modification of the eighth amended protective order.

With respect to the first factor—the nature of the protective order—the district court explained that Heraeus's burden was even higher because Heraeus agreed to the protective orders at issue. *See Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978) ("[W]here a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order."). Heraeus points out that paragraph 11 of the eighth amended protective order expressly contemplates modification because it reserves Heraeus's right to challenge Biomet's designation of any document as confidential and to seek relief

from the court. However, as the district court noted in its January 18, 2017 order, most protective orders provide for the possibility of amendment. Moreover, because the eighth amended protective order outlines a detailed dispute-resolution process that the parties must follow before they ask the court for relief, it actually restricts Heraeus's right to seek amendment. Thus, this factor weighs against modification.

The district court also considered whether Heraeus had shown good cause for modification. The district court concluded that Heraeus had not, stating:

> The only changed circumstance is that someone representing Heraeus (which has many lawyers in light of the number of jurisdictions in which it is trying to protect what it believes are its trade secrets) has decided that Biomet should be restricted in its use of the documents Heraeus wants to use and already has discovered. The only good cause is that the suspicions that motivate those lawyers might be correct.

The district court's conclusion was not an abuse of discretion. Indeed, Heraeus's third and final motion simply repeated arguments that the district court had already addressed (and rejected) in the underlying orders. In particular, Heraeus reiterated its claim that it owns the trade secrets contained in the Cited Documents. However, the district court had already rejected this argument in the ruling it issued just six weeks prior. In that order, the district court explained that the German court's conclusion on ownership was not binding because "issues of ownership, misappropriation, and violation of a trade secret are issues of law." Moreover, although Heraeus claimed that Biomet's refusal to accept restrictions on its use of the Cited Documents caused delays in Belgium and

Norway, enforcement proceedings had proceeded apace in several other countries despite a lack of such restrictions. Accordingly, Heraeus's failure to show good cause or changed circumstances also weighs against modification.

Finally, the district court considered the parties' longstanding reliance on the eighth amended protective order. Specifically, the court noted that it "has governed the parties' handling of litigation in about ten nations for more than a year." Therefore, this factor also weighs against modification.

In sum, the district court did not abuse its discretion by denying Heraeus's request to modify the eighth amended protective order to impose restrictions on Biomet's use of the Cited Documents.[7]

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[7] The district court questioned whether it had authority under § 1782 to restrict Biomet's use of its own documents. The district court noted that, while § 1782 gave it authority to "place limitations on the movant's use of the discovery material … any authority to limit respondent's use of discovery material is less apparent on the face of the statute." However, the district court said that, "[i]n denying Heraeus's motion to modify the protective order, the court has assumed that, if presented with appropriate grounds, the court would have authority to limit Biomet's use of the documents it produced under § 1782." Because the district court ultimately resolved the motion on a different ground and did not abuse its discretion in doing so, we do not need to decide this issue.