In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 18-2389, 18-2467, 18-2468, & 18-2855

W. JAMES MAC NAUGHTON,

*Plaintiff-Appellant,*

*v.*

ISHAIHU HARMELECH, *et al.*,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 10016 — **Gary Feinerman**, *Judge.*
Nos. 17-cv-227 & 06-cv-3578 — **Thomas M. Durkin**, *Judge.*
No. 16 C 9027 — **John Robert Blakey**, *Judge.*

_____

ARGUED MAY 17, 2019 — DECIDED JULY 31, 2019

_____

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* The complex background of these
consolidated appeals burrows through over a decade of liti-
gation. Russian Media Group sued Ishaihu Harmelech and
his company ("Harmelech Defendants") in 2006. Attorney W.
James Mac Naughton actively represented the Harmelech De-
fendants in this case ("RMG Action") for ten weeks ten years

ago. The relationship ended in a dispute over his fees. After he withdrew, the case settled with the entry of a consent judgment against his former clients.

Mac Naughton then pursued his former clients for money in myriad ways. One maneuver he used was acquiring rights to the judgment entered against his former clients in the RMG Action, the very matter in which he previously represented them. He then sought to collect this judgment by filing multiple other cases and by seeking to reopen the RMG Action.

In December 2014, Mac Naughton and Casco Bay (his company) sued Harmelech and his son to collect the RMG Judgment and to set aside the conveyance of property on Sunnyside Avenue ("Sunnyside Action"). In March 2015, Judge Holderman disqualified Mac Naughton from attempting to collect this judgment personally and from representing Casco Bay in its attempts to collect it. But Mac Naughton defied that order and continued his efforts. In June 2018, Judge Feinerman (to whom this case had been transferred) dismissed the claims predicated on this judgment as a sanction for Mac Naughton's willful defiance of the Holderman Order.

In September 2016, Mac Naughton sued Alden Management and others to collect for himself money owed to his former client ("Alden Action"). Judge Blakey dismissed this case as a sanction for violating court orders.

In January 2017, Mac Naughton sued his former clients to set aside a conveyance of property in Palm Harbor ("Palm Harbor Action"). Judge Durkin dismissed this case on the same grounds as Judge Feinerman dismissed the Sunnyside Action. Judge Durkin also rejected Mac Naughton's attempt to reopen the RMG Action.

In sum, the district judges in the four cases consolidated here rejected Mac Naughton's efforts to collect the RMG Judgment entered against his former clients. We affirm.

## I. Background

As warned, the tangled details of these consolidated appeals and related cases twist through thirteen years of federal and state litigation. Multiple courts summarized this history. A brief account suffices here. We sort the history by case.

### A. RMG Action

Russian Media Group ("RMG") provided Russian-language satellite television programming to subscribers. In 2006, it sued Ishaihu Harmelech and Cable America, predecessor of USA Satellite & Cable (collectively "Harmelech Defendants") in the Northern District of Illinois for unfair competition involving Russian television in Chicago-area apartments and violations of the Illinois Cable Piracy Act ("RMG Action"). In April 2009, the court ordered that all payments received by the Harmelech Defendants from certain apartment tenants must be held in escrow pending further order. On May 8, 2009, Mac Naughton began representing the Harmelech Defendants in this case. In the process, he learned confidential information about them. On July 16, 2009, he "stopped actively representing" them (his words) because they owed him attorney's fees and costs. He finally received leave to withdraw in January 2011. The case settled in his absence. In May 2011, the court entered a $286,374.76 stipulated judgment ("RMG Judgment") for RMG against the Harmelech Defendants and ordered the release of escrow funds to RMG. Harmelech claims he paid some of the RMG Judgment.

As discussed below, in August 2014, RMG assigned the unpaid part of the RMG Judgment to Casco Bay Holdings, owned and controlled by Mac Naughton, as part of a settlement in a New Jersey state court case. In September 2016, Casco Bay assigned its rights in the RMG Judgment to Mac Naughton personally.[1] In December 2017, Mac Naughton moved to reopen the RMG Action against his former clients. On June 22, 2018, Judge Durkin rejected this. He noted Judge Feinerman in the Sunnyside Action (discussed below) ruled Mac Naughton was violating a court order by continuing to pursue the RMG Judgment. Judge Feinerman dismissed the Sunnyside Action as a sanction for this continuing violation. In the RMG Action, Judge Durkin adopted Judge Feinerman's reasoning and ruled the RMG Action remained closed.

## B. Federal NJ Action

On August 11, 2009, the Harmelech Defendants gave Mac Naughton a promissory note for $65,879 for the attorney's fees in the RMG Action. According to Mac Naughton, the Harmelech Defendants defaulted in September 2009. So he sued them in the District of New Jersey in October 2009 ("Federal NJ Action"). In September 2016, Mac Naughton won a $77,679 judgment against the Harmelech Defendants in the Federal NJ Action. The Harmelech Defendants satisfied this judgment. But Mac Naughton wanted more. He argued he was entitled to attorney's fees for his *pro se* representation in the Federal NJ Action. The New Jersey district court rejected that argument because a *pro se* attorney may not recover additional attorney's fees in an action to collect attorney's fees from a former

---

[1] The assignment is dated September 2016, but Mac Naughton apparently notified the RMG court of the assignment in September 2017.

client. Mac Naughton appealed to the Third Circuit. That appeal pends.

## C. State Escrow Action

Mac Naughton claimed a security interest in the escrow released to RMG in May 2011 in the RMG Action. Mac Naughton sued RMG in New Jersey state court for damages arising out of the escrow release ("State Escrow Action"). In August 2014, RMG and Mac Naughton settled the State Escrow Action. Mac Naughton agreed to dismiss the State Escrow Action and RMG agreed to assign the unpaid portion of the RMG Judgment to Casco Bay Holdings, owned and controlled by Mac Naughton. The agreement said Casco Bay could collect the RMG Judgment from the Harmelech Defendants and would remit to RMG certain percentages of various amounts collected. As noted above, Casco Bay (by and through Mac Naughton) assigned its rights in the RMG Judgment to Mac Naughton personally in September 2016.

## D. Sunnyside Action

In December 2014, Mac Naughton and Casco Bay sued Harmelech and his son in the Northern District of Illinois, attempting to collect on the RMG Judgment and the Federal NJ Judgment, and seeking to set aside the conveyance of Harmelech's Sunnyside Avenue residence to his son. This case turns out to be the beginning of the end of Mac Naughton's tangled pursuit of what remains of the RMG Judgment. Mac Naughton represented himself and Casco Bay. The Harmelech Defendants moved in the Sunnyside Action (14 C 10016) and in yet another related action (14 C 10134) to disqualify Mac Naughton and Casco Bay from asserting the RMG Judgment. Judge Holderman disqualified Mac Naughton. In open court,

Judge Holderman ordered "Mac Naughton will have no fur-
ther action in this case." (Tr. Hr'g, Mar. 16, 2015, 14 C 10016
and 14 C 10134 at DE 118.) Judge Holderman ruled the scope
of the disqualification was set out in the motion in 14 C 10134.
This broad scope included all efforts by Mac Naughton to as-
sert the RMG Judgment against the Harmelech Defendants,
other Defendants, Defendants' current and former customers,
and Harmelech's family. So the disqualification did not per-
tain only to 14 C 10016 and 14 C 10134.

In written orders entered in the Sunnyside Action and the
related action the next day, Judge Holderman specified Mac
Naughton was disqualified from representing Casco Bay be-
cause he was "engaging in a position materially adverse to the
interests of his former clients in a substantially related matter
in violation of New Jersey Rule of Professional Conduct
1.9(a)." (Orders, Mar. 17, 2015, 14 C 10016 at DE 35[2] and 14 C
10134 at DE 78.) Judge Holderman did not disqualify Casco
Bay, but ordered it not to use any information Mac Naughton
obtained from his representation of the Harmelech Defend-
ants or any information he later obtained as an adversary to
his former clients. Casco Bay could continue to pursue collec-
tion of the RMG Judgment. Mac Naughton and Casco Bay ap-
pealed Judge Holderman's orders in March 2015, but we dis-
missed those appeals for lack of a final order.

The Sunnyside Action was eventually transferred to Judge
Feinerman. On June 5, 2018, he dismissed the claims predi-
cated on the RMG Judgment because Mac Naughton violated
the Holderman Order by continuing to seek to enforce the
RMG Judgment. Judge Feinerman concluded dismissal with

---

[2] We will refer to this order as the "Holderman Order."

prejudice was an appropriate sanction for Mac Naughton's willful defiance of the Holderman Order. Judge Feinerman also dismissed Mac Naughton's claims predicated on the Federal NJ Judgment, concluding Mac Naughton lacked standing to assert a hypothetical claim for attorney's fees under review by the Third Circuit.

**E. Alden Action**

In September 2016, Mac Naughton sued Alden Management and affiliated entities in the Northern District of Illinois. Mac Naughton sought to collect money nursing home customers owed to his former client for satellite television. On August 18, 2018, Judge Blakey dismissed the Alden Action, citing Judge Feinerman's dismissal of the Sunnyside Action and Judge Durkin's denial of reopening the RMG Action. Judge Blakey agreed with Judges Feinerman and Durkin, holding Mac Naughton violated the Holderman Order by filing numerous lawsuits to collect the RMG Judgment, including the Alden Action. Judge Blakey concluded Mac Naughton "has willfully violated lawful court orders, and … no sanction short of dismissal will deter [Mac Naughton] from his continued attempts to skirt the prior disqualification ruling."[3]

**F. Palm Harbor Action**

In January 2017, Mac Naughton sued his old clients yet again in the Northern District of Illinois. He sought to set aside the allegedly fraudulent conveyance of a condominium in Palm Harbor, Florida, by Harmelech to his wife. Mac Naughton claimed standing as assignee of the RMG

---

[3] At oral argument Mac Naughton said the Alden Action settled and documentation would be filed soon. But so far, neither our docket nor the district court's reflects the filing of any such documentation.

Judgment and as holder of the Federal NJ Judgment for breach. On June 27, 2018, Judge Durkin dismissed the Palm Harbor Action on the same grounds Judge Feinerman dismissed the Sunnyside Action. Judge Durkin specifically noted Mac Naughton's continued attempt in the Palm Harbor Action to enforce the RMG Judgment against his former client violated the Holderman Order. Judge Durkin also agreed with Judge Feinerman that the Federal NJ Judgment did not give Mac Naughton standing to pursue Harmelech because that judgment was satisfied and the claim for *pro se* attorney's fees—rejected by the New Jersey district court and appealed to the Third Circuit—was too hypothetical to convey standing.

### G. Summary

Mac Naughton represented the Harmelech Defendants in the RMG Action for ten weeks in 2009 but stopped for lack of fee payments. Then the case settled without him and the parties agreed to a judgment. Mac Naughton's company Casco Bay bought this judgment from RMG in August 2014. Mac Naughton and Casco Bay filed many actions against his former clients and others to collect it. In March 2015, Judge Holderman disqualified Mac Naughton from attempting to collect it in his personal capacity and from representing Casco Bay in its attempts to collect it. But Mac Naughton defied that order and continued litigating to collect it. He had Casco Bay assign it to himself in September 2016. The judges in the four cases on appeal here rejected his continued attempts to collect the RMG Judgment because these attempts violated the Holderman Order (and, subsequently, the Feinerman Order):

On June 5, 2018, in the Sunnyside Action, Judge Feinerman dismissed the claims predicated on the RMG Judgment as a

sanction for Mac Naughton's willful defiance of the Holderman Order and dismissed the claims predicated on the Federal NJ Judgment for lack of subject matter jurisdiction.

On June 22, 2018, in the RMG Action, Judge Durkin adopted Judge Feinerman's reasoning, concluded Mac Naughton was violating the Holderman Order by continuing to pursue the RMG Judgment, and rejected Mac Naughton's attempt to reopen the RMG Action.

On June 27, 2018, Judge Durkin dismissed the Palm Harbor Action. He concluded Mac Naughton's continued attempts to enforce the RMG Judgment against his former client violated the Holderman Order. And he concluded that the Federal NJ Judgment was satisfied and the mere appeal of the denial of attorney's fees for *pro se* representation did not give him standing in the Palm Harbor Action.

Finally, on August 16, 2018, in the Alden Action, Judge Blakey concluded Mac Naughton willfully violated the Holderman Order and the Feinerman Order and no sanction short of dismissal would suffice.

Mac Naughton appeals these four decisions rejecting his attempts to collect the RMG Judgment. He argues they relied on the Holderman Order which was wrongly decided. He also appeals the Sunnyside and Palm Harbor dismissals of his claims predicated on the Federal NJ Judgment.

## II. Analysis

### A. RMG Judgment

Mac Naughton tries to argue in these appeals that the issue is whether he violated New Jersey Rule of Professional Conduct 1.9(a) by attempting to enforce a consent judgment

against his former clients. In other words, Mac Naughton challenges the validity of the Holderman Order entered in the Sunnyside Action. But that ship has sailed. Mac Naughton tried to appeal the Holderman Order before but we dismissed for lack of jurisdiction because there was no final order. Mac Naughton never properly appealed the Holderman Order. We need not reach its merits, and we need not decide whether Mac Naughton violated RPC 1.9(a). Rather than abide by the Holderman Order and seek to challenge it properly, Mac Naughton repeatedly violated it. So, regarding the RMG Judgment, we are left at most with the issue of whether the four district judges erred by dismissing his actions (or, in the RMG Action, declining to reopen the action) because he violated the Holderman Order, regardless of its validity. But even on this issue, Mac Naughton's arguments are unpersuasive.

Mac Naughton acknowledges all four decisions before us relied on the Holderman Order to reject his efforts to collect the RMG Judgment. These judges had additional and independent reasons for rejecting Mac Naughton's efforts, but reliance on the Holderman Order was sufficient. Judge Feinerman dismissed the Sunnyside Action as a sanction for Mac Naughton's violation of the Holderman Order. Judge Durkin adopted Judge Feinerman's reasoning and rejected Mac Naughton's attempt to reopen the RMG Action. Judge Durkin also dismissed the Palm Harbor Action because Mac Naughton violated the Holderman Order. Judge Blakey dismissed the Alden Action as a sanction for Mac Naughton's violations of the Holderman Order and the Feinerman Order. We review these decisions for abuse of discretion. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992) (We reviewed for abuse of discretion a dismissal sanction for

violating a court order and emphasized the difficulty of meeting this burden: "a burden which is met only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate.").[4]

Mac Naughton fails to convince us any of these decisions were wrong, much less abuses of discretion. He does not even argue, for example, he did not violate the Holderman Order. Nor does he argue the sanctions of dismissals were excessive. Nor does he challenge the courts' inherent authority to sanction. Instead, he argues the judges erred by relying on the Holderman Order because it is invalid: "The lynchpin for all of these appeals is the validity of the Holderman Order. If the Holderman Order is invalid, then the dismissals of the *Harmelech Actions* must be vacated." (Appellant's Br., DE 77 at 31.) But, again, we need not decide the validity of the Holderman Order. Mac Naughton failed to abide by it and appeal it properly.

Here, the judges committed no error in dismissing Mac Naughton's actions for violating the Holderman Order. The Holderman Order disqualified Mac Naughton. It barred him from pursuing his former clients to collect on the judgment entered in the case in which he formerly represented them. The Feinerman Order echoed this bar. But Mac Naughton willfully defied disqualification. He had Casco Bay assign its rights in the RMG Judgment to himself, and he continued his *pro se* actions to collect it, in complete defiance of the Holderman Order. The judges were well within their discretion in

---

[4] Mac Naughton's appellate brief failed to include any statement of the applicable standard of review, in violation of Federal Rule of Appellate Procedure 28(a)(8)(B).

sanctioning Mac Naughton by dismissing the actions he should not have brought (and in rejecting Mac Naughton's effort to reopen the RMG Action against his former clients).

Regardless of whether Mac Naughton agreed with the Holderman Order, he had to follow it unless and until it was undone through proper channels, such as reconsideration by the district judge or vacatur by us. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person … believes [an] order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); *see also Nat'l Spiritual Assembly of Bahá'ís of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Bahá'ís of U.S., Inc.*, 628 F.3d 837, 846 (7th Cir. 2010) (recognizing that "a contempt proceeding is ordinarily not the proper place for collateral attacks on the underlying injunction"); *see also Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("[W]e can affirm the contempt citation without even reaching the issue of the order's validity. Parties must obey court orders regardless of their validity, unless the orders are stayed pending appeal."). Mac Naughton served as his own attorney but not as his own judge. He was not free to rewrite the order.

Any exception recognized in *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150 (7th Cir. 1984) (en banc), *rev'd on other grounds*, 470 U.S. 373 (1985), does not help Mac Naughton here. *Marrese* is distinguishable on many grounds. It involved a district court holding a party in criminal

contempt for refusing to comply with an order to produce certain membership files. *Id.* at 1151–52. We noted in that context:

> If a party is willing to pay the price of being punished for contempt (or suffering an equivalent sanction such as dismissal of the complaint) if the validity of the order he has disobeyed is ultimately upheld, he can get immediate review of that order by appealing from the contempt judgment. … If the underlying order is invalidated, the contempt judgment falls with it.

*Id.* at 1157. Sometimes, once a party produces certain information, nothing can unring that bell. But we did not say a party is always free to violate an order repeatedly, incur a sanction, appeal the sanction, and collaterally attack the underlying violated order in the appeal of the sanction. The instant appeals do not involve a situation like *Marrese* in which the party has no recourse but to violate an order. Mac Naughton could have complied with the Holderman Order simply by staying out of Casco Bay's way. If compliance caused a justiciable problem, he could have abided by the order, waited for a final judgment in the Sunnyside Action, and then appealed that along with the Holderman Order. But Mac Naughton did not do that. Instead, he willfully and repeatedly violated the Holderman Order.

Nor does *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550 (7th Cir. 2018), give such liberty. In *Haraeus*, we recognized that generally we may review all decisions that shaped the contours of a final judgment. *Id.* at 563. Indeed, had Mac Naughton abided by the Holderman Order, suffered prejudice thereby, incurred an unfavorable final order because of his obedience, and filed a timely and sufficiently broad

appeal, we might have been able to reach the merits of whether he violated RPC 1.9(a). But he did not do that. *Haraeus* does not give a litigant complete license to violate court orders.[5]

Courts have inherent authority to enforce their orders. *Link v. Wabash R.R. Co.*, 291 F.2d 542, 546 (7th Cir. 1961) ("Courts may exercise their inherent powers and invoke dismissal as a sanction in situations involving disregard by parties of orders … ."). The whole system would collapse if parties could always disregard orders they disagree with. *See In re Mann*, 311 F.3d 788, 789 (7th Cir. 2002) ("Half of all litigants (the losing half) may believe that the decision is incorrect, but it is essential to the operation of any legal system that unsuccessful litigants abide by the judgment unless they can persuade a higher court to set it aside."). The judges here committed no error in rejecting Mac Naughton's efforts to collect the RMG Judgment in violation of the Holderman Order.

## B. Federal NJ Judgment

Mac Naughton also argues the Sunnyside and Palm Harbor courts erred when they ruled claims predicated on the Federal NJ Judgment were hypothetical and unripe. But these courts committed no such error. In the Sunnyside Action, Judge Feinerman dismissed these claims because Harmelech paid that judgment in full and because the New Jersey district court denied Mac Naughton's motion for attorney's fees for his *pro se* collection efforts. Thus, there was nothing left of the Federal NJ Judgment to collect, and Mac Naughton had no

---

[5] Nor does anything like a Nuremberg exception apply here. The Allied tribunals would not have found any problem with the Holderman Order, or with sanctions for violating it.

standing in the Sunnyside Action based on that judgment. The mere fact he appealed the denial of his fee motion did not give him standing in the Sunnyside Action because he "does not have standing to enforce an attorney fee award that he does not hold." (Order, June 5, 2018, 14 C 10016, DE 242 at 10.) Judge Feinerman did not err here. Judge Durkin echoed this analysis in the Palm Harbor Action and likewise did not err.

### III. Conclusion

Having considered all arguments Mac Naughton properly raised to us and finding none availing, we AFFIRM.